FRANK LEWIS v. THE STATE.

No. 2245. Decided November 14, 1900.

1. Indictment—Grand Jury—Motion to Quash on Account of Race Prejudice.

Although the question of race prejudice in the formation of the grand jury which found the indictment against defendant, who was a negro, is not raised by a formal plea properly presenting the question, still, if the question is suffi-

ciently brought to the notice of the court, it is the duty of the court to hear the proof upon the issue of the quashal of the indictment.

**2.  Same—Equal Protection of the Law—Proof as to.**

To sustain a motion to quash the indictment upon the ground that defendant, a negro, was denied equal protection of the law, in that no negroes were upon the grand jury finding the bill, there should be adduced some testimony to show that the court, in impaneling the jury commissioners to select the grand jury, instructed them to exclude negroes; or some of the said jury commissioners should be called to testify as to the modus operandi in which they selected the grand jury; and, if talesmen were summoned to fill up said jury, evidence should be introduced to show whether the sheriff, in summoning them, intentionally avoided summoning negroes.

**3.  Race Prejudice—Motion to Quash the Special Venire—Proof as to.**

On the trial of a negro for murder, where he made a motion to quash the special venire upon the ground that no negroes had been summoned upon the same; Held, that, to support the motion, defendant should have introduced testimony to show that negroes were intentionally excluded from the list of jurors; or, that the district clerk failed and intentionally omitted to place the names of any negro jurors in the box from which he drew the special venire; or, that the sheriff, in summoning the jury, intentionally omitted negroes who were upon the list.

APPEAL from the District Court of Erath.  Tried below before Hon. LEE YOUNG, Special Judge.

Appeal from a conviction of murder in the second degree; penalty, thirty years imprisonment in the penitentiary.

Appellant was charged by the indictment, in four counts, with the murder of John Lucas, on the 27th day of April, 1900.

There is no statement of facts in the record.

The motions to quash the indictment and the special venire are fully shown in the opinion.

*C. Nugent,* for appellant, cited Carter v. Texas, 177 United States, 442; Smith v. State, 58 Southwestern Reporter, 97; Stander v. West Virginia, 100 United States, 303; Neal v. Delaware, 103 United States, 370, 397; Gibson v. Mississippi, 162 United States, 565; Fourteenth Amendment United States Constitution.

*Rob't A. John,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at thirty years confinement in the penitentiary.  There is no statement of facts in the record, and appellant appears to rest his case entirely on the action of the court on his motion to quash the indictment and on his motion to quash the special venire.  Appellant assigns several grounds for quashing the indictment, but we deem it necessary only to discuss that portion of the motion which attempts to raise a Federal question, as the others do not appear to us to be of a material character.  "Defendant alleges that there were no people of African descent on the grand jury, and that the strong racial prejudice existing between the white and black races in this county, State of Texas, influenced the action of the grand jury in

finding this bill of indictment against defendant; that defendant is a negro, and of African descent." The court appears to have heard testimony on the issue thus attempted to be raised. The substance of this testimony is that there were about 200 negroes in and around Stephenville, the county seat; that of these eight or nine could read and write, who owned their own houses; that six negroes could be found around Stephenville who were qualified jurors. Another witness testified that there were about 500 negroes at Thurber, another point presumably in the county; of these 250 or 300 were men, and that about all the negro men could read and write; that a jury of twelve men of African descent could easily be obtained at Thurber; that most of these negroes were miners, and lived in rented houses, and a great number of them were transient. It was also shown that there were about 5000 voters in Erath County, and about 4800 jurors. Out of this number 400 or 500 are negroes. It is also testified by one witness that negroes did not usually serve on juries in Erath County; that some prejudice existed between whites and negroes in said county.

In the first place, it does not occur to us that appellant tendered any issue involving the Fourteenth Amendment to the Constitution of the United States. He appears to have conceived the idea that, as he (appellant) was a negro, he had a right to have a negro grand jury, or at least that some of the constituents of said grand jury should have been negroes. We do not so apprehend the decisions of the Supreme Court of the United States on this subject. We understand that court to hold "that whenever, by any action of a State, whether through its Legislature, through its courts, or through its executive or administrative officers, all persons of the African race are excluded solely because of their race or color from serving as grand jurors in the criminal prosecution of a person of the African race, the equal protection of the laws is denied to him, contrary to the Fourteenth Amendment of the Constitution of the United States." See Carter v. Texas, 177 U. S., 442, 20 Sup. Ct., 687, 44 L. Ed., —. Recurring to the Carter case, supra, it will be seen that the motion in that case was of a formal character, and not only showed the fact that persons were excluded from the grand jury that found the bill in that case on account of their race, but that the grand jury was composed exclusively of persons of the white race; that this was done because of their race; and, although a great number of persons of African descent were qualified as jurors, and resided in Galveston County, these were intentionally excluded from serving on juries, and had been so excluded for a great number of years. But such is not the tender made in appellant's motion here. It may be said, however, that although the question was not formally presented to the district judge by proper plea, the Federal question was nevertheless brought to the notice of the court, and that it was the duty of the court to hear the proof; and it seems the court took this view of the matter, and heard all of the testimony offered. In our view, an examination of the record

utterly fails to show that anyone was excluded on account of his race; indeed, we are not informed of the constituents of the grand jury which found the bill in this case. We do not even know from an examination of the record that there were no negroes on the grand jury. In a matter of this sort we would have expected to have had some testimony with reference to the appointment of the jury commissioners who selected the grand jury, and whether or not the court, in impaneling them, instructed them to exclude negroes in drawing a grand jury; or we would have expected some of that jury commission to have been placed on the stand, and to have testified as to the modus operandi by which they procured a grand jury; or, if all of the members who were drawn were whites, and some did not attend, whether the sheriff, in summoning talesmen, filled up the panel, intentionally avoiding summoning negroes to serve on the grand jury. But there is no such testimony here. The utmost latitude seems to have been allowed appellant to present this matter by introducing testimony, and yet we are left utterly in the dark as to the essential issue which under the fourteenth amendment would vitiate the indictment; that is, although there were a number of negroes in Erath County qualified to serve as grand jurors, they were intentionally excluded from the list. All that we know is that a grand jury evidently found the bill of indictment against appellant—whether white or black we are not informed; that Erath County contained some 4800 qualified jurors; that 200 or 300 of these were negroes, and that negroes did not usually sit on juries. While it is our duty to give full effect to the fourteenth amendment and to the decisions of the Supreme Court of the United States construing the same, we are constrained to the view, in the first place, that the motion does not properly raise the question; and, in the next place, the evidence fails to show that appellant was denied the equal protection of the laws in that competent persons of his race were excluded from serving on the jury that found the bill of indictment against him.

Appellant also made a motion to quash the special venire out of which the jury which tried him was formed. His motion on this ground is as follows: "Now comes defendant, and objects to the special venire, and moves the court to quash the writ summoning the same; and he objects to being tried before said venire, or either of them, in this suit, for the following reasons, to wit: (1) Because the said venire—the writ of venire in this case—is irregular, being directed to 'the sheriff or any constable of Erath County,' while the law provides that it should be directed to the 'sheriff,' commanding the sheriff to summon the said venire. Defendant further alleges that the sheriff of Erath County did not summon said venire. (2) Defendant further alleges that he is a negro, and of African descent, and that the venire herein summoned is composed of white people exclusively, and that there are no negroes, or people of African descent, summoned on said special venire; that there is a strong racial prejudice existing in Erath County, Texas, between

the two races,—the negroes, or those of African descent, and the whites; that for this reason each of the parties or persons on said venire are disqualified to try the defendant under the law.  Defendant alleges that he should be entitled to be tried before a venire and jury composed of an equal number of white people and negroes, or those of African descent, or at least a division of said races; that the jury which tries him should, in order to give him a fair and an impartial trial, consist of as many negroes as white persons."   As to this motion we make the same observations heretofore made with reference to the motion to quash the indictment, to wit, that appellant entertains the idea that, as a matter of right, he was entitled to a negro jury, or at least half of the jury should be composed of negroes.  Concede, however, that the motion sufficiently raises the Federal question, appellant only introduced in support of it the same testimony which he had theretofore introduced in support of the motion to quash.  So, in this respect, he does not appear to have been in any better condition than with reference to the former motion.  We presume that the special venire was drawn in the case in accordance with our statutes on the subject, which requires the same to be drawn by the clerk from a list of all the jurors for the entire term of court.  Now, the evidence should have, in some degree at least, made an impeachment of the formation of the jury by the jury commissioners for the term, and have shown that they intentionally excluded negroes from the list of jurors; or, failing in this, that the clerk of the district court, in placing the names of the jurors for the term, intentionally omitted to place the names of any negro jurors in the box from which he drew the special venire; or that the sheriff, in summoning the jury, intentionally omitted negroes who were on the list.  As it is, we have no information as to how that special venire was constituted; much less as to any modus operandi by which negroes were intentionally excluded from the list.  We do not believe we are authorized to assume in favor of the defendant that which he was required to prove, for, in the absence of such evidence, it will be presumed that the court acted correctly, and with due regard to the provisions of the Fourteenth Amendment of the Constitution of the United States and the decisions of the Supreme Court thereunder.  We accordingly hold there was no error in the action of the court refusing to quash the indictment or the special venire.

In the absence of a statement of facts, we are not in a position to review the action of the court as presented in the bill of exceptions admitting certain testimony.  We can not tell whether the testimony was of a character to injuriously affect the rights of appellant.  Moreover, the court appears to have limited the effect of said evidence in appellant's favor.  The judgment is affirmed.

*Affirmed.*

[Note.—Appellant's motion for rehearing was overruled without a written opinion.—Reporter.]