# THE STATE v. WARNER, Appellant.

## Division Two, November 26, 1901.

1. **Challenging Grand Jury:** ACCUSED'S PRESENCE: CONSTITUTIONAL RIGHT: STATUTE. Where the accused, at the convening of the term of court, was in jail to answer a charge of felony, he has a right to be present at the impaneling of the grand jury and to make such challenges thereto as he may see fit to make, and if such request is made it is reversible error to deny it. His right to be present is a constitutional right, and the grounds for challenging the array can not be narrowed to the two grounds mentioned in the statute, to-wit, that a member of the grand jury is the prosecutor or complainant, or that he is a witness on the part of the prosecutor and has been summoned or bound in a recognizance as such. Nor is the indictment any the less invalid where this right is denied if the accused in his motion to quash sets up grounds for challenge which the court may judge insufficient, or which would have been adjudged insufficient if personally made by him before the grand jury was sworn.

2. ——: ——: CONSTITUTIONAL LANGUAGE. The right of the accused in a felony case to be present and make any challenge he may wish to the special grand jury array, is fundamental. The language of the Constitution, to-wit, "In criminal prosecutions the accused shall have the right to appear and defend in person and by counsel," can not be confined to the hour and place of actual peril, but implies the right to be present and challenge the array or the polls of the grand jury as much as it does the right to be present and challenge the petit jury.

3. **Constitutional Right:** INDEPENDENCE OF STATUTE: INHERENT ENFORCEMENT. Whenever a constitutional right has no statute specially adopted to enforce it, such as is the statute concerning the right of an accused "held for the grand jury" to be present and challenge the array of grand jurors, the Constitution itself supplies the lack of statutory provisions and by its own inherent potency enforces itself.

4. **Federal Constitution:** FEDERAL COURT'S INTERPRETATION AUTHORITATIVE: NEGROES AS JURORS. Wherever a Federal question is in-

volved in the trial of one charged of a felony, for instance, that the fourteenth amendment was violated in the selection of a grand jury, in that no negroes were chosen thereon, the accused himself being a negro, the Constitution of the United States, as interpreted by the Supreme Court of the United States, is the supreme law of the land, and must be respected and obeyed, the State Constitution and statutes to the contrary notwithstanding. But the laws of this State make no discrimination against negroes, but afford them every protection to life and liberty which white men have.

Appeal from Montgomery Circuit Court.—*Hon. E. M. Hughes,* Judge.

REVERSED AND REMANDED.

*E. Rosenberger & Son* for appellant.

(1) (a) The defendant should have been allowed to appear in person in court before the grand jury was impaneled, charged and sworn, because he is specially given that right by statute. R. S. 1899, sec. 2487. (b) "In criminal prosecutions, the accused shall have the right to appear and defend in person and by counsel." Art. 2, sec. 22, Constitution of Missouri; State v. Hoffman, 78 Mo. 256; State v. Smith, 90 Mo. 37. (2) Where a negro defendant files a motion, verified by affidavit, to quash the grand jury panel on the ground that negroes had been discriminated against and excluded from such jury on account of their race and color, it is error to overrule the motion to quash without first hearing evidence as to the facts alleged in the motion. Castleberry v. State of Ark., 63 S. W. 670; Carter v. Texas, 177 U. S. 442; Smith v. State, 162 U. S. 601. (3) (a) By overruling the defendant's motion to quash the grand jury panel without first inquiring into the truth or falsity of the allegations therein contained, the court admitted that the facts and allegations therein contained were true. Castleberry v. State of Ark., 63 S. W. 670. (b) Whenever, by any action of a State, whether through its Legis-

lature, through its courts, or through its executive or administrative officers, all persons of the African race are excluded, solely because of their race and color, from serving as grand jurors in the criminal prosecution of a person of the African race, the equal protection of the laws is denied him, contrary to the fourteenth amendment to the Constitution of the United States. Strauder v. West Virginia, 100 U. S. 303; Neal v. Delaware, 103 U. S. 397; Gibson v. Mississippi, 162 U. S. 565; Williams v. Mississippi, 170 U. S. 213; Ex parte Virginia, 100 U. S. 339; Virginia v. Rives, 100 U. S. 313; In re Wood, 140 U. S. 278; Carter v. Texas, 177 U. S. 442; Castleberry v. State of Ark., 63 S. W. 670.   (4)   Where a negro is indicted by a grand jury, and it appears in its organization that the negro race was discriminated against, the indictment would be violative of the fourteenth amendment to the Constitution of the United States granting equal protection of the laws to all citizens.   Carter v. State of Texas, 48 S. W. 508, and cases cited supra.

*Edward C. Crow,* Attorney-General, for the State.

(1)   The court committed no error in refusing to quash the panel of grand jurors.   Section 2487, Revised Statutes 1899, provides but two causes for challenging any one summoned as a grand juror, to-wit:   first, that he is the prosecutor or complainant in any charge against such person; and, second, that he is a witness for the prosecution and has been summoned or bound in a recognizance as such.   Section 2488 specifically provides that no challenge to the array of grand jurors, or any one summoned as a grand juror, shall be allowed for any other causes than such as are specified in the last section.   State v. Hudspeth, 150 Mo. 12.   (2)   In view of the fact that the right of challenge, either to the array or to the poll, did not exist at common law on the part of the prosecution or the accused

with reference to grand jurors, it plainly follows that challenges must be taken only for the causes specified in the statutes and by the persons therein named. In Missouri, under the provisions of the Code of Criminal Procedure, it is held that no objection to the body of grand jurors in the nature of a challenge to the array can be introduced in the form of a plea in abatement. State v. Bleekey, 18 Mo. 428; State v. Welch, 33 Mo. 33; State v. Connell, 49 Mo. 282. The indictment may be quashed for causes not appearing on the face of the record in this State, and the question as to the grand jury should be raised and was raised in the motion to quash. State v. Bachelor, 15 Mo. 208; Thompson and Merriam on Juries, sec. 543. The objection raised in the motion, before the grand jury was sworn, is substantially urged in the motion to quash the indictment and was heard by the court, and testimony allowed to be introduced, and if any error whatever should have been committed in refusing to hear testimony on the first motion, it was remedied by the hearing on the motion to quash. (3) Motion to quash was proper method. In 162 U. S. 584, the case of Gibson v. Mississippi, the Federal Supreme Court decided that the motion to quash the indictment by the accused upon the ground that negroes had been discriminated against in selecting the grand jury, was the proper way to raise this question. (4) The finding of the trial court as to the qualification of jurors will not be disturbed unless it appears that manifest error has been committed. State v. Williamson, 106 Mo. 163; State v. Bryant, 93 Mo. 273; State v. Brooks, 92 Mo. 542; State v. Greenway, 72 Mo. 298. Whether the juror stood indifferent between the State and the defendant was a fact which the court, under our laws, was required to determine, and his finding will not be disturbed unless manifest error occurs. State v. Bauerle, 145 Mo. 15. (5) No error was committed by the refusal to bring the defendant into court for the purpose of allowing him to challenge the grand jury. While it might not be an improper practice, where the right of

challenge exists, to bring one into court who is awaiting the action of the grand jury in order that there might be no complaint upon this score, the accused has no remedy for the failure of the officers to do so. State v. Holcomb, 86 Mo. 376; Thomason v. State, 2 Texas App. 550; People v. Romeo, 18 Cal. 89. (6) It is not claimed by counsel for appellant that the Constitution or the statutes of Missouri on their face discriminate against the negro race. The only contention is that an executive officer of the State, to-wit, the sheriff, in summoning the jury, has discriminated. It is not enough under the fourteenth amendment to show that the evil of discrimination against the negro race is possible under the administration of the Constitution and statutes of the State, but it must be shown, and the burden is on the party assuming to so show, that the actual administration of the Constitution and statutes of the State was a discrimination against the negro race in order to violate the fourteenth amendment to the Federal Constitution. (7) The third proposition of defendant is: "Whenever by any action of a state, whether through its Legislature, through its courts, or through its executive or administrative officers, all persons of the African race are excluded, solely because of their race and color, from serving as grand jurors in the criminal prosecution of a person of the African race, the equal protection of the laws is denied him, contrary to the fourteenth amendment of the Constitution of the United States." And counsel cite Strauder v. West Virginia, 100 U. S. 303; Neal v. Delaware, 103 U. S. 397; Gibson v. Mississippi, 102 U. S. 565; Williams v. Mississippi, 170 U. S. 213; Ex parte Virginia, 100 U. S. 339; Virginia v. Rives, 100 U. S. 313; In re Wood, U. S. 270; Carter v. State of Texas, 177 U. S. 442; Castleberry v. State of Ark., 63 S. W. 670. A brief glance at these cases cited by appellant will show that they are not applicable to the facts in the case at bar. The only contention of counsel for appellant is as set out in his argument that, "The only reasonable inference that could be drawn from these (meaning the facts) is that

no negroes were put on the grand jury list on account of the general prejudice and bias against the negroes." In Virginia v. Rives, 100 U. S. 322, the court decided that it was not a privilege or a right of the negro that the venire for the jury should be composed partly of persons of the petitioner's own race, and that the denial of a request of that kind did not amount to any denial of the right secured to negroes by any law providing for the equal civil rights of citizens of the United States. And in the case at bar, the most that can be made out of the testimony introduced on the motion to quash is that no negroes were put upon the panel of grand or petit jurors, and never had been in Montgomery county. In the Rives case above cited the Federal Supreme Court expressly say this state of facts does not show that any civil right was denied the negro race. 3 N. Y. 325; 65 Vt. 339.

GANTT, J.—At the May term of the circuit court of Montgomery county, the defendant was jointly indicted with his brother, John Warner, for a felonious assault, with malice aforethought. He was duly arraigned, pleaded not guilty, a severance was granted and he was tried and convicted and sentenced to the penitentiary for a term of nine years. The indictment is as follows:

"State of Missouri
            "vs.
"Fred Warner and John Warner.

"Charge: Assault with intent to kill.

"The grand jurors for the State of Missouri, within and for the body of the county of Montgomery, now here in court, duly impaneled, sworn and charged on their oaths, present and charge that Fred Warner and John Warner, late of the county of Montgomery and State aforesaid, on the twenty-fifth day of December, 1900, at and in the county of Montgomery, in the

State of Missouri, with force and arms in and upon George Thurmon, Howell Windsor, Herman Limberg, Thomas G. Cullom, feloniously, willfully, on purpose and of their malice aforethought, did make an assault; and the said Fred Warner and John Warner with a certain deadly weapon, to-wit, a double-barrel shotgun with gunpowder and leaden balls, which they, the said Fred Warner and John Warner, then and there had and held, did feloniously, willfully, on purpose, and of their malice aforethought, shoot off, at, against, and upon the said George Thurmon, Howell Windsor, Herman Limberg and Thomas G. Cullom, then and there giving to the said George Thurmon, Howell Windsor, Herman Limberg and Thomas G. Collum, in and upon the body of them, the said George Thurmon, Howell Windsor, Herman Limberg and Thomas G. Collum, with a double-barrel shotgun aforesaid, several wounds, with the intent then and there, them, the said George Thurmon, Howell Windsor, Herman Limberg and Thomas G. Collum, feloniously, willfully, on purpose and of their malice aforethought to kill and murder; against the peace and dignity of the State.                    W. B. M. Cook,

                              "Prosecuting Attorney.

"A true bill:   C. Pearson,

                    "Foreman of the Grand Jury."

The record, so far as necessary for the determination of the principal assignment of error, shows the following facts:

After the defendant shot Windsor, Limberg and others on December 25, 1900, he was apprehended and held to answer the action of the grand jury of Montgomery county at the May term, 1901, of the circuit court of said county. That court met the sixth day of May, 1901. The defendant was in jail awaiting the action of the grand jury. On the seventh day of May, 1901, and before the special grand jury which had been ordered by the court and summoned by the sheriff was impaneled, charged and sworn, the defendant's counsel requested the

court to have the defendant brought from the jail into court so that he might be present in court and make such challenges to the grand jury in person as he might see fit, which request was by the court denied, to which action of the court defendant by his counsel then and there excepted.

On the same day, and before the special grand jury was impaneled, charged and sworn, the defendant by his counsel filed his motion to quash the panel of the special grand jury which had been summoned by the sheriff, assigning as reasons therefor that he was a citizen of the State of Missouri, and of the United States of America, and was a person of color of African descent, commonly called a negro; that upon the oath of one Thomas G. Cullom, a white man of the Caucasian race, he stood charged with having maliciously and feloniously made an assault with an intent to kill the said Cullom and three other white men, and in default of bail had been committed to the jail of Montgomery county to await the action of the grand jury; that the sheriff of Montgomery county, who selected the special grand jury, selected no person or persons of color or of African descent, known as negroes, to serve on said grand jury, but on the contrary excluded from the list of persons to serve on said special grand jury, all persons of color of African descent more commonly called negroes, solely because of their race and color; that the grand jury was composed entirely of white persons, while all persons of color of African descent commonly called negroes, although constituting about one-eighth or twelve and one-half per cent of the population and legal voters of Montgomery county, and although otherwise qualified to act as grand jurors, were excluded from serving on any jury in the circuit court, which is a discrimination against defendant, such discrimination being a denial to him of the equal protection of the laws and the civil rights guaranteed him by the Constitution and laws of the United States, all of which he was ready to verify, and read said motion to the court and requested leave of the court to introduce witnesses

and offered to introduce witnesses to sustain the allegations of said motion, but the court declined to hear any evidence in support of said motion and thereupon overruled the same, to which action of the court defendant then and there excepted.

The grand jury was thereupon impaneled, charged and sworn and retired to consider their presentments, and afterwards on the ninth day of May and during the said May term, the grand jury returned into the court the indictment hereinbefore set out, charging the defendant with a felonious assault with intent to kill Thomas G. Cullom and three others on December 25, 1900, at Montgomery county, Missouri. And afterwards on the tenth day of May, 1901, and before arraignment and before pleading to said indictment, the defendant filed his motion to quash said indictment, which said motion is in words and figures as follows:

"State of Missouri, Plaintiff,

"v.

"John Warner and Fred Warner, Defendants.

"In the Montgomery county, Missouri, Circuit Court, May term, 1901.

"Now come the defendants, John Warner and Fred Warner, again in their proper person and in open court and before they plead to the indictment found against them by the present grand jury (having first objected to the impaneling, swearing and charging of the grand jury, which request and objection was by the court overruled, and to which action of the court the defendants, through their counsel, then and there excepted), and inform the court that they are citizens of the State of Missouri and of the United States of America and that they are persons of color of African descent, known as negroes, and that in said indictment preferred against them they are charged with having made an assault with the intent to kill one Thomas C. McCollum et al. (all white men of the Caucasian race) at

the county of Montgomery and State of Missouri, on or about the twenty-fifth of December, 1900. The defendants now in open court and in their proper persons and represented by counsel, move the court to quash, annul and set aside said indictment for the reason that the grand jury which found said indictment and which was selected by the sheriff of Montgomery county, Missouri, was composed solely and exclusively of white men of the Caucasian race, excluding therefrom all persons of color or of African descent known as negroes, and were excluded on the list of persons to serve on said grand jury on account of their race and color, although they constitute about one-eighth or twelve and one-half per cent of the population and legal voters of the county of Montgomery, and although otherwise qualified to act as such grand jurors, they were excluded therefrom, exclusively and solely on account of their race and color, and have been so excluded from so serving on any jury in this court, which is a discrimination against these defendants, and such discrimination is a denial to them of the equal protection of the laws and of their civil rights guaranteed them by the Constitution and laws of the United States of America.

"For a second and further reason for quashing, annulling and setting aside said indictment, defendants state that through their counsel they made the request that before said grand jury be impaneled, sworn and charged to inquire into the accusation preferred against them, they be allowed to appear in court in person and make such challenges to the array as they might see fit. (Which request was by the court overruled, and to which action of the court the defendants, through their counsel, then and there excepted.) Defendants state that through said action of the court in overruling their said request, they were denied their civil rights guaranteed them by the laws and Constitution of the State of Missouri and the laws and Constitution of the United States of America.

"For a third and further reason for quashing, annulling

and setting aside said indictment they state that had the court permitted them to be present in person at the impaneling, swearing and charging of the grand jury which returned this indictment, they would have challenged one Edward Hart, Esq., of McKittrick, Missouri, where the alleged offense was committed; that he was thoroughly conversant with the facts at issue before he was summoned, impaneled and sworn as a grand juror to inquire into the accusations against these defendants, and that in reality he is a witness in the case for the prosecution and was unable and unwilling to investigate the charges preferred against these defendants in an impartial and unbiased manner.

"Defendants further state that the said Edward Hart, Esq., had formed and expressed an opinion as to their guilt and that he had openly and publicly declared that they were guilty of the charges preferred against them before he was summoned, impaneled and charged as a member of the present grand jury which returned the indictment to which they are required to plead. Defendants further state that none of the facts stated in this third reason for quashing, annulling and setting aside said indictment were within the knowledge of their counsel, and, hence they were unable to make timely objection.

"Defendants further state that they stand ready to verify all the allegations contained in this motion.

"JOHN WARNER,<br>"FRED WARNER,

"John Warner and Fred Warner make oath and say that the facts and allegations contained in the foregoing motion are true.

"JOHN WARNER,<br>"FRED WARNER.

"Subscribed and sworn to this tenth day of May, 1901. My commission will expire December 21, 1904.

"WILLIS R. ANDERSON, Notary Public."

And upon this motion, on the eleventh of May, during the same term of court, evidence was introduced by defendant in support of said motion, and the same was overruled.

A similar motion was made to quash the panel of petit jurors.

At the hearing of said motion it was admitted that the county court in selecting the petit jury did not place the name or names of any colored person or persons of African descent, known as "negroes," on the list of persons from which the present petit jury was selected.

The motion to quash the petit jury panel was overruled by the court, and defendant excepted.

And afterwards, at the same term, the defendant was placed on trial and found guilty as charged in the indictment and his sentence assessed at nine years in the penitentiary.

Afterwards, in due time, he filed his motion for a new trial in which he assigned as errors the refusal of the court to permit him to be brought into court to make his challenges to the panel of the grand jury, and refusing to hear evidence in support of his motion to quash the panel of grand jurors, and in overruling his motion to quash said panel. Because the court erred in overruling his motion to quash the indictment and refused proper evidence in support of said motion and in allowing the affidavit of Edward Hart to be read in evidence in said motion. Because the court. overruled his motion to quash the panel of petit jurors. Because the grand jury was illegally constituted in that the sheriff failed to place any negroes on said panel, and discriminated against defendant because of his race and color.

The court overruled said motion and defendant excepted. A motion in arrest was filed in due time, in which all these grounds as to discrimination on account of race and color were again repeated. The court overruled said motion and defendant excepted. An appeal was granted and perfected and a bill

of exceptions, saving all said exceptions, was filed in the time allowed by the court.

When the circuit court of Montgomery county convened at its May term, 1901, the defendant was in jail, held to answer a charge of a felonious assault. A special grand jury had been ordered by the court, and summoned by the sheriff. Prior to the impaneling of this grand jury the defendant, by his counsel, requested the court to have defendant brought into court in order that he might be present and make such challenges to said grand jury in person as he might deem fit, which request the court refused and this denial of this request is the first error assigned on this appeal.

Section 2487, Revised Statutes 1899, provides: "Any person held to answer a criminal charge may object to the competency of any one summoned to serve as a grand juror, *before he is sworn,* on the ground that he is the prosecutor or complainant upon any charge against such person, or that he is a witness on the part of the prosecutor, and has been summoned or bound in a recognizance as such; and if such objection be established, the person so challenged shall be set aside."

Section 2488 provides: "No challenge to the array of grand jurors, or to any person summoned as a grand juror, shall be allowed in any other cases than such as are specified in last section."

The twenty-second section of our Bill of Rights, Constitution of Missouri, 1875, declares that: "In criminal prosecutions the accused shall have the right to 'appear and defend, in person and by counsel." By section 2610, Revised Statutes 1899, it is further provided that "no person indicted for a felony can be tried unless he be personally present during the trial."

These constitutional and statutory provisions have been before this court for construction on several occasions. In State v. Underwood, 57 Mo. loc. cit. 50 and 51, it appeared that the defendant was present in court throughout the trial, and

after his conviction he filed a motion for a new trial. Whilst he was in jail the attention of counsel was called by the court to certain causes assigned for a new trial and thereupon the prosecuting attorney suggested that the prisoner should be brought into court, but the court announced it would not be necessary as no action would be taken on the motion at that time, but the court desired a reference to authorities. Authorities were read to the court, and counsel stated their views in the absence of the prisoner, and the matter went over until the next day, when, the prisoner being present in court, the motion was taken up and argument of counsel had and the motion overruled. It was held no violation of his right to be present.

In State v. Brown, 63 Mo. 439, the record did not show the presence of the accused at the hearing of his motion for a new trial, and this was urged as error, but this court held that the hearing of a motion for new trial was no part of the trial, but a subsequent proceeding in which the statute did not require his presence and ruled the point against defendant.

But in State v. Hoffman, 78 Mo. 256, the defendant, by his counsel, requested to be present in court when his motion for new trial was passed on by the court, and his request was refused, and on appeal this court held such refusal was reversible error, saying: "The question here presented is a very different question from that which arose in Brown's Case. Here the accused demanded his right, under the Constitution, to be present, not at the trial in the technical narrow sense of the statute, as construed in the Brown Case, for the Constitution has no such restricted meaning, but to appear and defend throughout the proceeding against him, which is pending in the trial court until the determination of the cause by the rendition of a judgment. If the court could refuse to permit the accused to be present, with equal propriety it could exclude his counsel. The Constitution does not declare that either may appear, but 'that the accused shall have the right to ap-

pear and defend in person and by counsel.' He had the right to make suggestions to his counsel, or, if he desire, to argue the motion to the court."

In State v. Lewis, 80 Mo. loc. cit. 112, as it did not affirmatively appear that defendant was denied the privilege of being present, the objection was unavailing.

The language of the Constitution and Bill of Rights, is not, shall have the right to be present *"at his trial"* for the offense charged, but *"in criminal prosecutions"* he shall have the right to appear and defend in person and by counsel. That the impaneling of a grand jury to consider the charge which a prisoner is held to answer, is a most important step in *"a criminal prosecution"* will not be gainsaid, and section 2487 expressly authorizes the prisoner to challenge the array or the polls for certain causes. That his challenge may prove ineffectual does not detract one whit from his right to be present, view the array, and its members, in order to determine whether he will exercise his right to do so or not. In this case the record discloses he made the request and it was expressly denied. Section 22 of the Bill of Rights evinces a jealous solicitude for the rights of an accused person, and it is of the most supreme importance that these rights shall not be infringed by judicial construction.

In People v. Romero, 18 Cal. 89, this identical state of facts existed and that court, presided over by Chief Justice STEPHEN J. FIELD, afterwards justice of the Supreme Court of the United States, in an opinion of Judge BALDWIN, said: "It seems to be an unquestionable right of the prisoner to challenge the grand jury, or any member on the impaneling of the jury, *when he has been previously held to answer*. We see no provision of the statute allowing a challenge after such impaneling, when the prisoner had been previously in the custody of the law. It is not right that the prisoner should be convicted under these circumstances. The effect of the denial of his legal privilege of challenge was to render the grand jury in-

competent to sit on his case, just as if he stood before a petit jury and was refused the right to challenge any one or more of the panel." Under such circumstances the court held the indictment was worthless, in other words, not a legal indictment, because not found by a body competent to act on the case, provided the prisoner applied for the leave or requested permission to appear and challenge the grand jury.

This error should reverse this case, unless on his subsequent motion to quash the indictment on the ground that the grand jury was illegally organized, a hearing was given him and this cured the error.

Upon first blush we were somewhat inclined to hold that, if at some subsequent stage of the prosecution the constitutional right which had been denied when first demanded, had been granted to defendant it would cure the error, but upon investigation we find that the circuit court, on the hearing of the motion to quash, held that section 2488, Revised Statutes 1899, allowed a challenge to the array upon two grounds *only,* to-wit, that a member of the panel was the prosecutor or complainant against the defendant, or was a witness for the State and had been summoned or bound in recognizance as such, and thereupon overruled that motion. So that, while the court heard the evidence as to discrimination against defendant on account of his race and color, it evidently construed the statute as limiting the right to challenge the array to the two statutory grounds specified in section 2477, whereas the defendant was invoking a right guaranteed to him by the fourteenth amendment to the Constitution of the United States, and where the statute of the State comes in conflict with the Constitution, either of the State or the United States, the latter necessarily controls. As was said in Ex parte Marmaduke, 91 Mo. loc. cit. 267: "Whenever a constitutional right comes in contact with a statute, the former tolls the latter; and whenever a constitutional right, such as is now under discussion, has no statute specially adapted to enforce it, by its own inherent potency,

, and leaning not on the adventitious aids of statutory regulation, it supplies the lack of statutory provisions and enforces itself." And so it was ruled in Carter v. Texas, 177 U. S. 442, in a cause in which the statute of Texas, like our own, limited the grounds of challenge to the array to two causes only. So that the hearing on the motion to quash, not only did not cure the error of denying defendant his right to be present, and make his challenge, but the ruling of the court accentuated the error in that it forever precluded the assertion of that right.

But independently of the subsequent proceedings, we hold that the denial of the right of the prisoner to be present and make any challenge he might have to the array on the polls of the special grand jury, was a fundamental error. As said by the Supreme Court of California, it vitiated the indictment, *not on account of its form,* but for the far more important and controlling reason that it rendered that grand jury incompetent to sit on his case. His liberty could not be taken from him except on an indictment preferred by a duly constituted and organized grand jury and one competent to inquire into his alleged offense. The same right exists to one held to answer a charge by a grand jury, to be present to challenge the array or the polls, as is vouchsafed to every defendant to be present and challenge the petit jury.

The right to be present in all criminal prosecutions includes the right to be present when the grand jury is impaneled and can not be confined, as was said by that able and eloquent lawyer, Mr. Uriel Wright, in State v. McO'Blenis, 24 Mo. 405, "to the hour and place of actual peril, when liberty and life shall be in greatest jeopardy, when the accused shall stand before [a petit jury] a tribunal having power over either or both; but the words ['in criminal prosecutions'] are broad enough to cover the initiate prosecution, whenever and wherever it takes the matured form of a legal accusation of crime," and it has always been recognized that the accused has the right to be present when the grand jury, who alone can prefer

the indictment, is being impaneled and organized. [1 Burr's Trial, 38.]

As already said, it is immaterial that after being brought before the court he may not deem it necessary to make any challenges, or that those he may make shall not be adjudged sufficient to set aside the array or any of the members of the jury, as this was denied him after an express request to be present, the judgment must be reversed and a new grand jury impaneled to consider the charge for which he is held.

We express no opinion as to the sufficiency of the proof to sustain the charge of discrimination against the prisoner in the selection of the grand and petit juries on account of his race and color.

Whatever our individual views as to the proper construction of the fourteenth amendment, the Supreme Court of the United States has given its construction of that amendment as it affects the selection of grand jurors who are to make presentments of negroes charged with crime, and petit juries who are to finally pass upon such charges.

The laws of this State, in our opinion, make no discrimination against negroes, but afford them every protection to life and liberty which white men have. It will be time enough after another grand jury shall have been selected and constituted, and an indictment preferred, and the defendant convicted, to determine whether, in the individual case, the grand jurors or the petit jury have been selected with a view to exclude therefrom citizens of African descent, or negroes, simply because of their race and color.

This question has been before the Supreme Court of the United States, and the courts of last resort in our sister States, on numerous occasions. [Virginia v. Rives, 100 U. S. 313; Neal v. Delaware, 103 U. S. 370; Gibson v. Mississippi, 162 U. S. 565; Smith v. Mississippi, 162 U. S. 592; Carter v. Texas, 177 U. S. 442; Whitney v. State, 59 S. W. 895; Lewis v. State, 59 S. W. 1116; Whitney v. State, 63 S. W. 879;

Smith v. State, 58 S. W. 97.]

Wherever the Federal question is involved, the Constitution of the United States, as construed by the Supreme Court of the United States, is the supreme law of the land, and as such must be respected and obeyed, and we respectfully call the attention of the circuit and criminal courts to these decisions with a view to obviate objections like this now constantly being urged.

The judgment is reversed and the cause remanded for proceedings in accordance with the views herein expressed. All concur.