THE STATE v. SYLVESTER MILLER, Appellant.

Division Two, January 4, 1915.

1. **CARNAL KNOWLEDGE: Evidence of Subsequent Acts: No Election.** Where there was no request for a rule to compel the State to elect upon which of the three acts of sexual intercourse it would stand until after the close of the case, it was not error to admit evidence of the second and third acts, the State having at the close of the evidence elected to stand on the first.

2. ———: **Peremptory Instruction to Acquit.** The fact that a child was born is conclusive proof of carnal knowledge, and if there is substantial evidence that defendant was the guilty cause of the girl's undoing a peremptory instruction to acquit should be refused.

3. ———: **Instruction for Lower Offense.** Where the evidence shows that if an offense was committed it was rape, instructions as to lower offenses are not proper. Where it shows carnal knowledge of a girl twelve years old instructions on an attempt to rape or common assault should be refused.

4. **DEPOSITION: Non-Residence.** When a litigant offers a deposition in evidence on the ground that the deponent lives outside the county such non-residence must be shown by such litigant.

5. ARGUMENT TO JURY: Prosecuting Attorney. Remarks by the prosecuting attorney to the jury in the prosecution of a defendant charged with carnal knowledge of a girl twelve years old, that "if you do not convict this man you ought never to be allowed to sit on another jury in this county" and "this man deserves the severest punishment; he tried to get his wife to be a prostitute and to sell herself to the lust of other men," objected to and unrebuked, exceptions being saved to the failure of the court to properly rebuke him and to instruct the jury to disregard them, were prejudicial in the extreme and reversible error.

6. CARNAL KNOWLEDGE: Instruction: At Any Time. Instructions telling the jury that if they found defendant had carnal knowledge of the twelve-year-old prosecutrix "at any time," where she testified he had sexual intercourse with her on three separate occasions, are erroneous.

Appeal from Grundy Circuit Court.—*Hon. George Hall,* Special Judge.

REVERSED AND REMANDED.

*R. E. Kavanaugh* and *George H. Hubbell* for appellant.

(1) The tenth instruction for the State assumes the fact of three acts of intercourse, and is a comment on the evidence. State v. Langley, 248 Mo. 554; Linn v. Bridge Co., 78 Mo. App. 111; Stone v. Hunt, 94 Mo. 480. (2) State's instructions numbered 1, 2, 3, and 4 are contradictory to State's instruction numbered 10 and constitute reversible error. State v. Palmberg, 199 Mo. 240; State v. Schenk, 238 Mo. 457; State v. Pruitt, 202 Mo. 49. (3) The court erred in denying defendant's request to instruct on assault with intent to rape. State v. Chissell, 245 Mo. 554; State v. Conway, 241 Mo. 287. (4) The remarks of the prosecuting attorney in his argument to the jury constitute reversible error, and the court erred in failing to rule and to rebuke counsel for the State and in failing to instruct the jury to disregard said remarks. State v.

Jones, 249 Mo. 80; State v. Hess, 240 Mo. 147; State v. Brown, 247 Mo. 729; State v. Furgeson, 152 Mo. 99; State v. Wellman, 253 Mo. 302; State v. Bobbst, 131 Mo. 338; State v. Webb, 254 Mo. 414. (5)  The court erred in sustaining the State's objection to the deposition of Sigel Speery.  Sec. 6411, R. S. 1909; O'Brien v. Transit Co., 212 Mo. 70; McFarland v. Accident Assn., 124 Mo. 221; Moudy v. Beef & Provision Co., 149 Mo. App. 421; Love v. Cherry, 24 Iowa, 209; Cohen v. Daniels, 25 Iowa, 90. (6)  The court erred in overruling defendant's objection to the introduction of any evidence tending to show other and subsequent acts of intercourse.  State v. Palmberg, 199 Mo. 233; State v. McKinney, 254 Mo. 689. (7)  The prosecutrix gave testimony of an indecent or common assault and the trial court erred in ignoring this issue in submitting the issues to the jury and denying defendant's request. State v. Hoag, 232 Mo. 316.

*John T. Barker*, Attorney-General, and *Lee B. Ewing*, Assistant Attorney-General, for the State.

(1)  The instructions given by the court properly declared the law of this case.  When construed together there is no error in same.  State v. Wilcox, 111 Mo. 572; State v. Weisman, 238 Mo. 558; State v. Montgomery, 230 Mo. 671; State v. McKenzie, 177 Mo. 715; State v. Hall, 228 Mo. 469; State v. Moore, 168 Mo. 432; State v. Miller, 111 Mo. 551; State v. Mathews, 98 Mo. 125; State v. McClure, 25 Mo. 338.  Instruction 10 is correct, and appellant's criticism of same is not warranted.  Instructions 1, 2, 3, 4, when read in connection with instruction 10, are correct declarations of law.  (a)  Instruction No. 3 uses the term "intercourse."  The other instructions use the term "sexual intercourse," "carnal knowledge."  The last two terms are synonymous, and mean a completed act of intercourse.  Webster's International Diction-

ary. The testimony shows a completed act; and in addition, prosecutrix gave birth to a child. State v. Swain, 239 Mo. 723; State v. Brown, 247 Mo. 584. (b) The court did not err in refusing to instruct on assault with intent to commit rape. The testimony shows a completed offense. State v. Sykes, 248 Mo. 714; State v. McCaffrey, 225 Mo. 623. (2) On the argument of this case the prosecuting attorney said: "Gentlemen, this man deserves the severest punishment; he tried to get his wife to be a prostitute and sell herself to the lust of other men." He further stated in the argument as follows: "Gentlemen of the jury, if you do not convict this man you ought never to be allowed to set on another jury in Grundy county; there will be no use of prosecuting bootleggers because these lawyers will make these kind of defenses for them." We think the above remarks, especially the first one, wholly indefensible, and of such character as might be highly prejudicial to appellant. State v. Hess, 247 Mo. 147; State v. Brown, 247 Mo. 728. (3) The court did not err in excluding the depositions of Sigel Speery. Sec. 6411, R. S. 1909; O'Brien v. Transit Co., 212 Mo. 70. (4) The court did not err in overruling defendant's objection to the introduction of evidence tending to show subsequent acts of sexual intercourse between prosecutrix and appellant. State v. Young, 99 Mo. 284; State v. Henderson, 243 Mo. 503; State v. McKinney, 254 Mo. l. c. 698; People v. Koeller, 142 Cal. 621; Lipham v. State, 125 Ga. 52; State v. Trustee, 128 Iowa, 82; State v. Peres, 27 Mont. 358; State v. Woodruff, 72 Neb. 815; State v. Sykes, 112 Tenn. 572; State v. Fetterly, 33 Wash. 599. (5) The evidence was sufficient to sustain the judgment. State v. Swain, 239 Mo. 723; State v. Wilcox, 111 Mo. 569.

ROY, C.—Defendant was charged with carnally knowing Minnie Bell Woods, a female child under the age of fourteen years. The jury convicted him and

fixed his punishment at fifteen years' imprisonment in the penitentiary.

Frank Woods and wife, the parents of Minnie, were married at Trenton, Missouri, and lived there at intervals. They had lived in St. Joseph about a year prior to October, 1912. They had six children and were so poor that the children seldom had necessary clothing to go to school. The mother could neither read nor write, and was a mother before she was a wife. The father was a drunkard and was in the work-house in St. Joseph from September 9, 1912, convicted of drunkenness and abusing his wife. James Miller, the father of Mrs. Woods, lived at Trenton. On October 8, 1912, Mrs. Woods and the younger children, including Minnie, went to Trenton, their fare being paid by the city. They moved into a house in Trenton belonging to James Miller. The defendant lived at Trenton, was forty-six years old, had a wife and two small children. He worked in the mines. He and Mrs. Woods were double cousins. Minnie's father did not join the family at Trenton until about October 15th.

Two or three days after Mrs. Woods and the children got to Trenton, Minnie went with the defendant to his house and staid all night. On the way the defendant gave her a half dollar to buy things to eat. She testified that he told her not to show the money to his wife and that he tickled her hand. Her sister had told her what that meant. She testified that while at defendant's house she showed the half dollar to defendant's wife and told her about the defendant tickling her hand and what it meant. As to that incident the defendant testified as follows: "I know what my wife said she told her. Q. Do you know whether or not she told her that you had tickled her in the hand and wanted her to go out in the grass? A. I believe I heard my wife say something about that. Q. And that's what caused the separation? A. I think it was."

As a result, the defendant's wife left him at once, and in a few days defendant took up his abode at the Woods home, moving his effects to that place a little at a time during the course of a week or more.

About the 18th of October defendant went to a show with Minnie. She testified that on the way back from the show they went to the defendant's house and that defendant there had sexual intercourse with her; that several days later the carnal act was repeated at the bridge, and that about October 25th it occurred again at defendant's house, whither they had gone for some dishes. About Christmas, Frank Woods had a disagreement with the defendant about their accounts, and the defendant left, going to live again with his wife.

Minnie told no one about defendant's sexual intercourse with her until after a "full-term" female child was born to her on July 8, 1913. That child lived about half an hour. Minnie was born July 15, 1901, and was not twelve years old until about a week after her child was born. According to the testimony of Minnie and her mother, neither of them knew that she was pregnant until she was in the throes of maternity. There was no physician present until several hours after the child was born. When the physician came, Minnie told him that the defendant was the father of the child, and he wrote that fact in the report of the child's birth. That report was read in evidence without objection.

One Sigel Speery lived at the Woods home in St. Joseph for a few weeks. He was an old acquaintance and fellow laborer of Frank Woods. The evidence is contradictory as to just when he left the Woods home. While there he went with Minnie to a store about a block distant and bought for her a pair of shoes and some clothes. Minnie and her mother testified that he furnished those articles with money due from him to Mrs. Woods. At a term of the court previous to the

trial, Speery furnished Frank Woods with money to enable him to attend the trial of the case.

The Woods family moved back to St. Joseph after the birth of the child. Minnie and her mother contradicted each other as to whether Speery slept in the mother's room on the floor and as to whether the mother drove Speery away from the place, Minnie affirming and the mother denying.

Samantha Ferguson, Minnie's sister, testified that she (witness) was sixteen years old and had been married over two years, and that her husband had spent eighteen months of that time in the penitentiary, while she was in the House of the Good Shepherd. She testified that she and her husband had notified her mother never to put foot in her house again; that she had gone to the office of defendant's attorney to tell what she knew. She testified that when Minnie was about nine years old she had seen her sitting on Speery's lap in the presence of the family and that he had his hand under her dress.

Defendant took Speery's deposition at Trenton, January 17, 1914, before the trial began on February 2. In that deposition he testified:

"Q. Where do you live now? A. Wherever my hat is, I am here to-day and somewhere to-morrow. Virtually this is my home. I was here all last winter and about three months last fall. Q. Where were you in December, 1912? A. St. Joseph. Q. Where were you in November, 1912? A. Kansas City, I believe. About that time I left St. Joseph and went to Kansas City. Q. And where were you in October, 1912? A. I went to St. Joseph from Kansas City, I was down there all winter."

The certificate of the notary to that deposition stated that the residence of the witness was unknown. On January 29, 1914, the marshal of the city of Trenton served a subpoena on Speery in the case. The sheriff and his deputies testified that he was not in

attendance at the trial, two of them stating that they had not seen him for about a week.  The State objected to that deposition on the ground that the witness was in the county.  The court offered to issue an attachment for the witness, which was not accepted by defendant.  The objection was sustained.

The defendant denied that he ever had carnal knowledge of the prosecutrix.  After the prosecutrix had testified to the first act of sexual intercourse, the defendant objected to the introduction of any evidence as to subsequent acts of the same character.  The objection was overruled.  At the close of all the evidence the State elected to stand on the evidence as to the first act.  Defendant then asked a peremptory instruction to acquit, which was refused.  The tenth instruction was as follows:

"The court instructs the jury that under the law of this State, each act of intercourse constitutes a distinct and separate crime and that the State cannot prosecute a defendant for more than one offense, and the State has elected to prosecute on the evidence as to the first act of intercourse, therefore you are instructed that you cannot convict on the evidence as to either the second or third acts of intercourse."

The first, second and fourth instructions authorized the jury to convict if they found that defendant had carnal knowledge of Minnie Woods *at any time,* *without* distinguishing between the three times mentioned in the evidence.

Defendant requested the court in writing as follows:  "At the close of all the evidence the defendant requests the court to instruct the jury with respect to all grades of offenses as shown by the evidence in this cause and to instruct the jury as to all the law in the case."  Which request was marked refused.

Counsel for the State in his argument to the jury said:  "Gentlemen of the jury, if you do not convict this man you ought never to be allowed to sit on

another jury in Grundy county; there'll be no use of prosecuting bootleggers in this county because these lawyers will make these kind of defenses for them."

. The defendant objected thereto and asked the court to rebuke counsel and to instruct the jury to disregard the remarks. There was no ruling.

State's counsel also said in his argument to the jury: "Gentlemen, this man deserves the severest punishment; he tried to get his wife to be a prostitute and to sell herself to the lust of other men; and his children"—

There was the same objection and request. The following then occurred:

"Court: Mr. Robinson, I don't remember any testimony of that kind and you will keep within the record.

"Mr. Hubbell: The defendant excepts to the failure of the court to properly rebuke counsel for the State and its failure to instruct the jury to disregard said statement."

I. It is objected that the tenth instruction assumes that there were three acts of sexual intercourse, and that it is a comment on the evidence.

**Instructions.**

We hold that there is no ground for either of these criticisms. All the instructions, including those not set out herein, were before the jury. They clearly left it to the jury to find whether there was such an act.

II. Defendant says it was error for the court to admit evidence as to the second and third acts of intercourse. The law on that subject is very clearly stated in State v. Palmberg, 199 Mo. 233. That case holds that the question as to the time during the trial at which the State will be required to elect on which act of intercourse the prosecution will stand is one

**Carnal Knowledge:
Evidence: Election.**

calling for the exercise of the discretion of the trial court. In this case the defendant did not ask that the State be required to elect until after the evidence was all in. As no election had been called for or made, there was no reason for excluding the evidence offered as to the subsequent acts. The method of procedure in such cases is laid down in the cases cited and can be easily followed when the case is tried again.

III. The refusal of the defendant's peremptory instruction for an acquittal was not error. The fact that the child was born is an absolute showing that a crime was committed. There was abundant evidence for the jury to say whether the defendant was the guilty party.

Demurrer to Evidence.

IV. The trial court properly refused to instruct on an attempt to rape and on common assault. Where the evidence shows that if any offense was committed it was rape, instructions as to the lower offenses are not proper. [State v. Sykes, 248 Mo. 708; State v. Alcorn, 137 Mo. 121.]

Rape.

V. The deposition of Sigel Speery was properly excluded. He said in his deposition "virtually this is my home." He was in Trenton on January 17th when the deposition was taken. He was served with a subpoena there on January 29th. Two of defendant's witnesses had seen him about a week before they testified. The evidence shows that at times he had lived at St. Joseph and Kansas City, but he claimed Trenton as his home, and it is not shown that he lived elsewhere from the time his deposition was taken to the time of the trial. When a party offers a deposition on the ground that the witness resides out of the county where the trial occurs, such non-residence must be shown by the party offering the deposition. [O'Brien v. Transit Co., 212 Mo. l. c. 72.]

Deposition.

VI.   We have held that there was abundant evidence to go to the jury as to the defendant's guilt.

**Argument to Jury.**   On the other hand we can appreciate the fact that the evidence was such as to call for a fair and unprejudiced consideration of the case by the jury.   The prosecuting attorney did not permit such a consideration of the case. His conduct was prejudicial in the extreme.

VII.   Instructions 1, 2 and 4 were erroneous in not limiting the jury to a conviction on the evidence as to the first act of intercourse.

The judgment is reversed and the cause remanded. *Williams, C.*, concurs.

PER CURIAM.—The foregoing opinion of Roy, C., is adopted as the opinion of the court.   All of the judges concur, *Faris, J.*, in result.