**STATE of Missouri, Respondent,**

v.

**Charles Dea LANGSTON, Appellant.**

**No. 50297.**

Supreme Court of Missouri,

Division No. 1.

Oct. 12, 1964.

Thomas F. Eagleton, Atty. Gen., Jefferson City, Bill D. Burlison, Sp. Asst. Atty. Gen., Cape Girardeau, for respondent.

Daniel S. Norton, Sikeston, for appellant.

HIGGINS, Commissioner.

Charles Dea Langston was convicted of statutory rape and the jury assessed his punishment at imprisonment in the penitentiary for a term of nine years. Section 559.260 RSMo 1959, V.A.M.S. He has appealed from the ensuing judgment.

By information filed January 23, 1963, appellant was charged with the rape of his stepdaughter, Margaret, on or about December 5, 1960. The victim was twelve years old at the time of the alleged offense and fifteen years old at the time of trial on May 29, 1963.

Because of the nature of appellant's points on appeal, it is necessary to review the evidence in this sordid case in considerable detail.

Pauline Langston, mother of the prosecutrix, married appellant when prosecutrix was three or four years old and prosecutrix' home was with her mother and appellant until the Fall of 1962. The family also included prosecutrix' own brother, three stepsisters, and a stepbrother.

Prosecutrix testified that she knew the meaning of sexual intercourse and that she had "an intercourse" with appellant at the home at "Heuer's place" on or about December 5, 1960. She fixed this date by

further testifying that she had a baby September 5, 1961, nine months later. She denied intercourse with anyone other than appellant. She testified also that appellant started "fondling" her when she was six years old, and that he had "an intercourse" with her when she was seven. She stated that she was then in the second grade and that she bled and was sore. She testified that at that time and for about seven years the family lived "off of Perryville Road eight miles from Cape"; that they then lived in "Timm's house in the same neighborhood" for about three or four months; that they then moved back to the original place for about six months and from there to the Heuer farm. The witness also testified that appellant used vaseline which he said would "keep me from getting pregnant." She also testified that appellant said "that we would keep the baby and then later on when I would get older that we might get married sometime." Prosecutrix' testimony showed frequent acts of the above description during the five or six-year period from the first incident to the act charged in the information.

On cross-examination prosecutrix stated that she had told no one about appellant's acts until December 5, 1962, and gave as her reason her fear that her stepfather (appellant) would beat her and leave her mother. She told her mother that her pregnancy resulted from a rape on the streets at Cape Girardeau and told her doctor that she was raped by an unknown person in the Rialto Theater in Cape. She also said that these stories were what appellant told her to tell and that the stories were to "cover up." She also testified that she went to school in Jackson which was four or five miles from her home where the alleged rape occurred, and that she did not tell any of the teachers about appellant because of the fear of her stepfather.

Jay Nations, Juvenile Officer of Cape Girardeau County, testified that he talked with appellant in the juvenile office in Cape Girardeau about Margaret's pregnancy on September 26, 1962; that he talked again with appellant on a farm near Old Appleton on October 8, 1962, and at the police station in West Memphis, Arkansas, on November 29, 1962. He stated also that he talked with Margaret on September 25, October 8, and November 29, 1962, and that the last conversation was in West Memphis, Arkansas, in the apartment in which she and appellant were then living. On cross-examination he stated he had had several conversations with Margaret since the above time; that he first talked to her as a result of an anonymous telephone call; that Margaret denied any sexual connection between herself and appellant until admission which occurred in a conversation on December 6, 1962.

Deputy Sheriff Herbert Riehn stated he was with Mr. Nations on the occasion of October 8, 1962. He testified also that Mr. Nations asked Margaret what she would say if he said he knew a person who saw her and her father together, and that Margaret said, "I would say it was a durn lie."

On recall to the stand, prosecutrix testified that after the visit of the juvenile officer about September 29, 1962, appellant and her mother went to see Mr. Norton, a lawyer in Sikeston, on October 10, 1962, and that on October 16, 1962, the family went down to Dexter from whence appellant and Margaret "left for Memphis." On cross-examination prosecutrix testified that there had been some conversation about a family move.

Dr. L. A. Masters testified that he delivered prosecutrix of a child on September 5, 1961.

Pauline Langston, mother of prosecutrix and wife of appellant, testified that appellant treated all the children kindly and equally; that she had enjoyed a good relation with her daughter to the extent of discussing sexual matters during her growing up; that she had helped prosecutrix bathe and dress and had never seen any injury; that prosecutrix told her that her pregnancy came about at the Rialto Theater in Cape Girardeau; that prosecutrix in her

presence offered to take a lie detector test to prove appellant innocent.

Robert Earl Langston, brother of prosecutrix, testified that he had never seen anything unseemly between appellant and prosecutrix.

Appellant took the stand to deny that he had ever fondled or had intercourse with prosecutrix.

Appellant has briefed four points on appeal.

Appellant's Point 1 is that the court should have directed a verdict for him at the close of all the evidence because "The testimony of the prosecuting witness required corroboration and none was offered." Appellant cites cases containing and applying the rule that a conviction in cases of rape may be had upon the uncorroborated evidence of the prosecutrix, but when the evidence of such prosecutrix is of a contradictory nature, or when applied to the admitted facts in the case, her testimony is not convincing but leaves the mind of the court clouded with doubts, she must be corroborated or the judgment cannot be sustained. State v. Tevis, 234 Mo. 276, 136 S.W. 339, 341 [6]; State v. Hobson, Mo., 177 S.W. 374, 377 [7]; State v. Burton, 355 Mo. 467, 196 S.W.2d 621, 622 [1]; State v. Goodale, 210 Mo. 275, 109 S.W. 9, 11 [2].

State v. Wilcox, 111 Mo. 569, 20 S.W. 314, contained a situation akin to the present case. That case involved an illicit sexual relationship carried on by a father with his daughter for a period between her eighth and fourteenth years. Just before the arrest prosecutrix strenuously protested innocence for her father. It was the court's opinion that there was no corroboration, and the explanation of prosecutrix' failure to disclose the relationship was fear of her father. Under this set of similar circumstances, the court said, l. c. 316: " * * * According to her story, the first act was committed when she was only eight years of age, not old enough to understand the signification of the wrong done her. Thus from that day she was trained and corrupted by her own father by repeated acts, until she probably lost those womanly feelings which prompt instinctive utterance of horror and anguish at such outrages. We cannot say, then, that the evidence of this prosecutrix should be altogether ignored. Improbable as her evidence may be, contradicted on collateral facts as the witness is, monstrous as the accusation against defendant may be, it is still, after all, a question of fact for the trial court and jury, and this court should not interfere."

■■ We feel that the alleged failure to corroborate the prosecutrix in this case is governed by this holding.

We are not, however, limited in this case to uncorroborated testimony. The information here charges appellant with the rape of prosecutrix on or about December 5, 1960. A child was born to the prosecutrix on September 5, 1961. We have previously held that the offense of statutory rape may be proved by evidence of the birth of a child to an unmarried female under the statutory age. In State v. Miller, 263 Mo. 326, 172 S.W. 385, 388 [3], the court said: "The fact that the child was born is an absolute showing that a crime was committed." See also State v. Johnson, 361 Mo. 214, 234 S.W.2d 219, 221 [2]; State v. Wells, Mo., 367 S.W.2d 652, 655 [7-9]; State v. Bowen, 247 Mo. 584, 153 S.W. 1033, 1037 [3, 4]. We rule this point against appellant and hold that it was for the jury to determine if he was the guilty party.

■■ By his Point 2 appellant contends that the evidence fails to show venue of the alleged offense in Cape Girardeau County. Upon her cross-examination, the prosecutrix stated that she lived "four or five miles from Jackson" when the offense charged was committed, and that she was then going to school in Jackson. By our judicial notice that a point four or five miles from Jackson has to be in Cape Girardeau County, we determine that venue

was established; State v. Phillips, Mo., 324 S.W.2d 693, 694 [3]; State v. Heissler, Mo., 324 S.W.2d 714, 716 [2]; State v. Kenyon, 343 Mo. 1168, 126 S.W.2d 245, 252 [10]; and the question was for the jury to find under Instruction 1 that the acts in question occurred "in the County of Cape Girardeau and State of Missouri." State v. Hartwell, Mo., 293 S.W.2d 313, 318 [12, 13]. We rule this point against appellant.

◼ Appellant next complains in Point 3 that the court admitted evidence relating to acts of intercourse occurring subsequent to the date charged in the information. Our attention is first directed to page 44 of the transcript which we have searched and found no such testimony. Additional complaint on this point is made of the testimony of witness Nations to the effect that "On 29 November, 1962, I talked with Margaret at an apartment she and Mr. Langston were living in, in West Memphis, Arkansas." We cannot say that this testimony necessarily leads to the inference of commission of an illicit act subsequent to the date charged in the information and a reading of the transcript reveals that this testimony, considered with other circumstances in evidence, was properly received as evidence of flight. State v. Peterson, Mo., 305 S.W.2d 695, 700 [9–13].

◼ Appellant contends further on this point that the court should have declared a mistrial in the closing argument when the prosecuting attorney, with reference to events of October 1962, stated: "It is not reasonable that a girl of this age about to have a baby is going to leave the care and protection of her own home with her mother." The court sustained an objection to the argument and instructed the jury to disregard it as not being evidence in the case. An examination of the entire argument reveals that the prosecuting attorney was at this stage arguing the existence and effect of flight in the case. We have already held that evidence on this score was proper and we do not believe that the trial

judge abused his discretion in his handling of the argument.

◼ Finally, appellant claims in Point 4 that the court erred in submitting this case because there was no proof of penetration. In support of this charge, appellant cites States v. De Moss, 338 Mo. 719, 92 S.W.2d 112, and State v. Devorss, 221 Mo. 469, 120 S.W. 75. In De Moss the prosecutrix' testimony did not measure up to any standard of proof of rape, and there were no additional circumstances from which a jury properly could make an inference of guilt of rape. The Devorss case, however, contained a situation similar to this case. There the prosecutrix was a child of thirteen years of age and, like the prosecutrix here, the substance of her testimony was that the defendant had intercourse with her. The court in that case held that her testimony was sufficient to take the issue to the jury. In support of its holding the court used language which we think appropriate to this case: "For instance, if a child be born of an unlawful connection, and, in a prosecution against its father for rape, the female testify that the child was born of that connection, *penetration would be shown by that fact.* Now, if the prosecuting witness had only testified that the defendant had intercourse with her, and her testimony stopped at that, we concede there would be failure of proof as to penetration; but, when we consider the facts testified to by her, we can come to no other conclusion than that sexual penetration actually occurred. She meant nothing else by the use of the word 'intercourse,' and her testimony could have reference to nothing else." State v. Devorss, supra, 1. c. 77. See also State v. Hamilton, 304 Mo. 19, 263 S.W. 127, 129 [1, 2].

We have held above on Point 1 that proof of the birth of a child to this prosecutrix is absolute proof of the commission of a rape, and such would include proof of the necessary element of penetration. State v. Miller, supra. See also State v. Barnes, 325 Mo. 545, 29 S.W.2d 156, 158 [1]. This issue was properly for the jury and the point is ruled against appellant.

We have also examined the information, verdict, judgment and sentence, as required by Supreme Court Rule 28.02, V.A.M.R. The information is sufficient to charge statutory rape. Defendant waived formal arraignment and he pled not guilty. The verdict is in proper form and is responsive to the issues, and the punishment is within limits prescribed by law. Defendant and his counsel were present throughout the trial and counsel represented appellant on appeal. Allocution was granted and the judgment and sentence was responsive to the verdict.

The judgment is affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All concur.