THE STATE v. REX BAKER, Appellant.—300 S. W. 699.

Division Two, December 12, 1927.

*North T. Gentry,* Attorney-General and *J. D. Purteet,* Special Assistant Attorney-General, for respondent.

WHITE, J.—The appeal is from a judgment in the Circuit Court of Butler County, following a verdict of guilty on the charge of statutory rape.

Rex Baker, the defendant, on the fourth of August, 1926, became the owner of a house-boat on Black River in Butler County, and continued to own that boat until the twenty-eighth of August, when he was arrested. The evidence for the State tends to show that during that period Arminta Sims, a girl fourteen years of age, lived with him on the house-boat. At the same time and in the same house-boat one Cole Ward and a girl named Fleta Belts lived together. According to the testimony of Arminta Sims, the defendant was away only three or four nights in that period and during the rest of the time he slept with her on the house-boat, while Cole Ward slept with Fleta Belts. Before the purchase of the house-boat the defendant had stayed with her at two different hotels. In one of them he had registered as R. F. Bacon and wife. The prosecutor had Arminta say specifically that Rex Baker had sexual intercourse with her each night she stayed on the boat.

The defendant succeeded in showing that the girl had a bad reputation, but the evidence is not clear as to whether that reputation was

acquired before or after her association with the defendant. At any rate, she was a waif with no home; a piece of human flotsam drifting before the winds of chance. She lived in extreme proverty. Her father, a worthless fellow, took no care of his family. He drove her away from home and swore it was on account of her conduct, but the evidence tended to show it was because he did not want to support her. She said she pretended to think a great deal of Rex, but that she didn't. She stayed with him on the boat because she had no place to go. She is spoken of in the evidence as the "little girl." She must have been small of her age; undeveloped, ignorant and helpless. The prosecutor was at pains to have her say that she understood the words used to describe the crime. Her pathetic condition doubtless influenced the jury in inflicting a heavy punishment, notwithstanding her ill repute.

The defendant denied that he sustained any improper relations with the girl; said that he kept her, along with the other girl, on the boat to do the work. Mrs. Baker, defendant's wife, testified that she took pity on the girl, because of her scant clothing and general helplessness and made clothes for her; that her husband was away from home only two or three nights while he owned the boat. The effect of the defendant's evidence was that the taking in of the girl was purely a charitable act.

The defendant tendered the issue and, with indifferent success, endeavored to show that he possessed a good reputation. The most that he could bring out in that respect was that the witnesses had never heard anyone give him a hard name. As one witness put it: "Some would say one thing, some would say otherwise." The State offered evidence tending to show that his reputation was bad, and on cross-examination of his character witnesses made it quite clear that he was engaged in bootlegging. It developed that he had gone by an assumed name—Finley—which he offered to show was his middle name. Some of the questions asked intimated that previously he had had another wife, and doubt was cast upon the validity of the later marriage. The jury found him guilty and assessed his punishment at five years in the penitentiary.

I. Appellant filed no brief here. In the motion for new trial error is assigned to the ruling of the court permitting the State's attorney to indorse on the information during the progress of the trial the name of Dr. I. N. Barnett. After the arrest of the defendant the girl was taken to a detention home where she was kept until the trial. While on the stand in re-cross examination by defendant's counsel she said she had been examined by Dr. Barnett. Thereupon the prosecutor asked leave to place the name of Dr. Barnett on the information. Defendant's at-

torney objected, asserting that to permit the Doctor to testify would be a surprise and he would not be in position to meet the testimony. When called as a witness in rebuttal the Doctor testified he had examined the girl and found she had experienced sexual intercourse, and had some infection, which he declined to name, for which he was treating her.

In the matter of indorsing names upon an information after trial has begun, the trial court has large discretion. [State v. Peak, 292 Mo. l. c. 257-258.] This court will not reverse a judgment on that account unless it appears that defendant was prejudiced by it. We are unable to see how an earlier indorsement of the name on the information would have had any advantage to the defendant. He did not move to quash, ask continuance, nor pray for time or opportunity to investigate the truth and character of the Doctor's testimony. Besides, the Doctor's testimony added nothing to what had already been said. The defendant did not contest the fact that the girl was not chaste, but made effort to show that she had sustained unlawful relation with other men. No fact was brought out by the Doctor's testimony which affected the situation.

II. The motion asserts that the court committed error in permitting Dr. Greathouse, Harrison Cozort and John Petty to testify after the rule requiring witnesses to remain out of the court room had been invoked, because said witnesses were allowed to remain in the court room during the trial, and because all their names were not earlier indorsed upon the information. They were character witnesses. No such objection as that in the motion was made to the testimony of Dr. Greathouse, but to the testimony of Cozort and Petty that objection was made. The motion does not prove itself. The record does not show that the rule excluding witnesses had been ordered, nor does it show that those witnesses had remained in the court room. Nor does any fact appear showing that the defendant was prejudiced or surprised by the indorsement of their names on the information. What is said above answers that objection. [State v. Glon, 253 S. W. l. c. 364.]

III. On the ground that such question was outside the examination in chief, it was claimed that the court erred in permitting the prosecuting attorney to ask the wife of the defendant on cross-examination if she had not said that she did not believe the prosecuting witness was guilty of misconduct with her husband, and thought she was a good girl. The witness had testified in her direct examination about the girl, her conduct and where she lived; that she knew Arminta had run around nights, and that she had admitted mis-

conduct with many men. The question asked the witness tended to impeach the correctness of her statement and was proper.

IV. It was further complained that the court erred in permitting the State's attorney to elicit from Mrs. Baker the fact that defendant's house-boat had been searched under authority of a search warrant. The witness had testified very particularly about her husband's stay on the boat. She had said he was at home during the nights he was said to have been on the boat. The matter arose in explaining his whereabouts the night the girl was taken from the boat. The question asked was this: "Was the defendant at home the night the officers searched the house-boat?" There was no objection on the ground that the question tended to bring out that he was guilty of other crimes and thereby provoked a search of his boat. The objection was only that the question was not within the scope of the direct examination. It was entirely within the scope of the examination in chief, for the only answer that could be responsive to it was to locate him on a particular date.

V. Further objections were that the court permitted the jury to separate at one period; that the prosecuting attorney, in the presence of the jury, ordered the arrest of Cole Ward and Fleta Belts, State's witnesses, and that the sheriff or deputy permitted the jury to attend church where a revival meeting was in progress. There is nothing in the record to support any of those assignments.

VI. It was claimed also that the court committed error in permitting evidence of improper conduct between the defendant and the prosecuting witness before the date of the offense of which he stands charged. Such evidence is always admissible for the purpose of showing the relation of the parties. [State v. Guye, 299 Mo. 1. c. 367; State v. Cason, 252 S. W. 1. c. 689.]

VII. The State's attorney in cross-examining defendant's character witnesses asked them if they had not heard about the sheriff making a raid and getting a still off the boat. There was no objection at the time to those questions, nor to the answers to them, so appellant is not in position to complain of them here.

The defendant had a fair trial and the record shows no error which was prejudicial to his rights.

The judgment therefore is affirmed. All concur.