THE STATE v. HARRY LEBO, Appellant.—98 S. W. (2d) 695.

Division Two, November 17, 1936.

*James A. Bradley* for appellant.

*Roy McKittrick*, Attorney General and *J. E. Taylor*, Assistant Attorney General, for respondent.

LEEDY, J.—By information filed in the Circuit Court of Dunklin County, appellant was charged with the crime of rape, in that he, on or about the 26th day of October, 1934, upon one Mae Bell Lebo, forcibly and against her will, feloniously did ravish and carnally know. Upon a trial, he was found guilty, and sentenced to imprisonment for a term of twenty-five years. After an unsuccessful motion for a new trial, appellant has perfected this appeal, but has filed no brief.

Appellant and prosecutrix are admittedly father and daughter, and on the date of the alleged offense Mae Bell was approaching her twentieth birthday, which occurred on December 25, 1934. We adopt and set forth, with minor alterations and additions, respondent's statement as a sufficient outline of the facts of the case. (quotation marks omitted), viz.: The evidence on the part of the State tended to show that the defendant lived on a farm about eight miles southwest of Kennett, Missouri. On the 26th day of October, 1934, the date of the alleged assault, the defendant and prosecutrix, Mae Bell Lebo, and her little brothers and sister left their home at about six o'clock to go to the show in Kennett, Missouri, in a 1928 Whippet sedan which had been made into a truck. After the show they all returned to the Lebo home at about ten-thirty o'clock, P. M. When they returned home the children, with the exception of Mae Bell Lebo, got out of the car and the defendant punished the prosecutrix and said: "You s-o-b, if you get out I will go in the house and kill you." He then made her drive the car to the end of the (Eudora) hard road and down a little ways and then back, at which time the defendant threw the prosecutrix down in the front seat of the car after slapping her and hitting her in the face and jaw, he took her clothes off and overcome her resistance and had intercourse with her in the front seat of the car. "He just rode me there for about an hour and a half or two hours." Prosecutrix, after the assault, left the car and reached home at about eleven-thirty; the defendant left the car and went in the other direction, south of where the car was sitting. Prosecutrix, on arriving home, told her mother that defendant had been whipping her ever since they left the house but did not tell her that he had raped her. Prosecutrix testified that

the reason she did not complain to anybody about the assault was that she was afraid of defendant, and that he had threatened her life. Prosecutrix did not tell anyone about the alleged rape until November 11, 1934, at which time she told a man in town, whose name she had forgotten, and also Rolla Chambers and the prosecuting attorney. Prosecutrix testified that the defendant on a number of occasions forcibly had intercourse with her, the last offense before the one which the defendant was charged with on the 26th day of October was the Friday before, at which time the defendant forced her to have intercourse with him on a bed at home while her mother was out in the field. Prosecutrix testified that defendant stated in the presence of her mother that she would have another kid by him and that she already had had one. Dave Childers testified on behalf of the State that on the 26th day of October, 1934, the date of the alleged offense, he lived a quarter and a half north of the west end of the Eudora road. On the night of the 26th of October he saw Harry Lebo and Mae Bell Lebo going west off at the end of the gravel road and then saw them turn around and drive back to the end of the road and park on the south side. He testified they sat in the car a few minutes but he did not go to find out what they were doing or saying; the next he saw was Harry Lebo leaving the car going south afoot, and Mae Bell leaving the car going east, he was about 125 or 150 feet from them at the time the car was turned and parked; he did not hear anybody "holler." Ivy Lebo, thirteen-year-old sister of Mae Bell and daughter of the defendant, testified that on the night of the 26th when they got home from town she and Hubert, her brother, got out of the car and her father and Mae Bell went on down the hard road; she further testified that three or four weeks before this time she and her father and sister Mae Bell were out in the car and they stopped in a little lane where you go up to the Two-Mile School House; they were all drinking home brew and she laid down back of the car; at that time the defendant told Mae Bell to get on his lap and she commenced crying, he then told her to lay down on the car seat and later they drove on. Hubert Lebo, aged fifteen, son of Harry Lebo and brother of Mae Bell Lebo, testified that he remembered the night they went to the show and that they all came home together and that Mae Bell and his father went off in the car but they were not gone only about twenty minutes when Mae Bell came back. Five witnesses testified on behalf of the defendant in regard to his reputation for morality and being a law-abiding citizen. The defendant testified in his own behalf and denied having assaulted his daughter on the 26th day of October as charged in the information, or ever having assaulted her at any other time, or that he ever had any immoral conduct with his daughter. He further testified that the prosecutrix, in the presence of the

sheriff, called him a G— D— s-o-b and said: "I have got my foot on you, and, you G— D— s-o-b, I am going to see that your neck is broke before I get it off." Thomas F. Donaldson, sheriff of Dunklin County, testified that he had a conversation with the defendant on the day he was placed in jail in which the defendant, Harry Lebo said, "If I got any from Mae Bell I didn't take it away from her." Fred Rigdon, deputy sheriff, also testified that he was present when the defendant was talking to the prosecuting attorney and the sheriff and heard him say, "If I got any from Mae Bell I didn't take it away from her."

 The grounds of the motion for a new trial take a rather wide range. Some of them may be summarily disposed of because they do not meet the requirements of the statute in that they are too general. [Sec. 3735, R. S. 1929, sec. 3735, Mo. Stat. Ann., p. 3275.] The following assignments, stated in separately numbered paragraphs in the motion, are embraced within the classification just mentioned: "Because the verdict is against the law as declared in the instructions given by the court; Because the verdict is against the evidence; Because the court erred in failing to instruct upon all the law in the case; Because the verdict is excessive and the result of passion and prejudice."

 I. Proceeding to a consideration of the matters sufficiently preserved for review, we take up the two grounds assigning error in failing to sustain appellant's demurrers, one offered at the close of the State's case and one offered at the close of the whole case. If there was any error in the overruling of the demurrer at the close of the State's case, it was waived by appellant offering evidence in his behalf. [State v. Barr, 336 Mo. 300, 78 S. W. (2d) 104, and cases cited.] However, in view of the disposition we find necessary to make of the case, and without detailing the reasons, we think it sufficiently appears from the statement of facts that the State made out a submissible case, and there was no error in refusing to direct a verdict of not guilty at the close of all the evidence.

 II. The most important questions requiring our consideration grow out of the testimony of the prosecutrix in relation to prior attacks upon her by appellant. Mae Bell testified that at intervals during the two years preceding the date of the offense in question, appellant had committed a series of acts—four or five in number—each of which, if they occurred as detailed by the witness, constituted a separate and distinct *forcible rape* upon her. The last of these offenses was said to have occurred on Friday next before the date of the offense in question. It is charged that the court erred in: (1) Permitting the State to make such proof; (2) failing to require the State to elect as to which of said separate felonies it would stand; and (3) giving Instruction No. 12 which told the jury that evidence

of such relations and acts was admitted "for the sole purpose of shedding light upon *the intent and motive* of defendant" in the charge for which he was on trial. When prosecutrix first made complaint touching the several completed acts of forcible rape upon her does not appear. From the record, the inference is clear and unmistakable that it was not until after appellant had been arrested and charged in the case at bar. There is nothing even remotely tending to show that it was prior thereto, and the information, in one count, charges a single offense on a date specified. A fundamental rule of law, requiring no citation of authorities, is that which excludes, on the trial of the accused, evidence of his commission of independent crimes. In State v. Myers, 82 Mo. 558, it was said, "It (the rule) rests upon the equitable and humane principle that it is unjust to raise a presumption of guilt against the prisoner, on the idea that having committed one offense the moral obliquity or depravity it exhibits makes it probable he would commit another. And it is difficult to guard against the blunder of the average jury in failing to distinguish the real purpose for which such evidence is admitted, as against the bad impression it would likely make on them as to the prisoner's general character, it is contended that it would be safer to exclude it under all circumstances. But the rule has its exceptions founded in as much wisdom and justice as the rule itself." Among others, certain offenses involving carnal intercourse are held to be exceptions to this general rule. But do the exceptions extend to the situation presented by the facts of this case? The bill of exceptions shows that the trial court based its ruling on the case of State v. Patrick, 107 Mo. 147, 17 S. W. 666. The evidence held admissible in that case related to a recent attempt to commit the same offense (rape) for which he was on trial, as did the case of People v. O'Sullivan, 104 N. Y. 481, upon the principle of which the Patrick case was decided. In other words, it was held that upon the trial of the defendant for the crime of rape it was competent to prove that he had attempted to commit the same crime upon the same woman a short time prior thereto. It was put upon the ground that it tended to show intent. Insofar as the Patrick case held the evidence complained of to be admissible *on the ground just stated,* we think it unsound. An instruction, based on that holding, which limited the purpose of such evidence, was expressly condemned in State v. Hersh (Mo.), 296 S. W. 433. Although, as respondent points out, the case does not appear to be controlling authority because what was said on the point was *obiter*, in that the assignment was held to be not sufficiently preserved for review. However, it was for the guidance of the court upon another trial, which was found necessary. It was there said, "If defendant actually committed the act on the child, intent or motive was not germane, notwithstanding State v. Patrick."

And so it is, we think, in the case at bar, because in cases of forcible rape (except, theoretically, perhaps) intent is not a necessary element, and, therefore, not in issue where the facts of the particular case are such that defendant is bound to know the nature and character of his act. Where, as here, the State shows a completed act of forcible rape, and it is denied by defendant, how can it be said that there arises any real question with respect to intent? There is nothing in State v. Campbell, 210 Mo. 202, 109 S. W. 706, making it authority on this point, it merely holding that a conversation between prosecutrix and the accused, disconnected with the assault, was "not of that nature and character which would classify it as improper acts or solicitations to sexual intercourse, so as to make it admissible in evidence."

To sustain the ruling of the trial court in admitting the evidence complained of, the State cites State v. Cason (Mo.), 252 S. W. 688, State v. Guye, 299 Mo. 348, 252 S. W. 955, and State v. Baker, 318 Mo. 542, 300 S. W. 699, in each of which the charge was *statutory* rape. Do these cases form a precedent for the reception of the evidence complained of? In the Cason case, supra, it was said, "In prosecutions for statutory rape, where the female is under the age of consent, evidence of prior criminal acts between the same parties is admissible as tending to prove the crime charged. . . . The reason why such evidence was held admissible is stated by this court in State v. Pruitt (incest), 202 Mo. l. c. 53, 100 S. W. l. c. 432, 10 Ann. Cas. 654, as follows: 'Such evidence is of such a character as tends to make it probable that the parties did commit the specific offense charged; they constitute the foundation of an antecedent probability.' " Evidence of the type complained of is generally held admissible on the ground that such other acts of illicit intercourse between the parties tends to corroborate as to the particular act charged—not for the purpose of showing a different offense, but to show the relation and familiarity of the parties. Or, as said in the Cason case, "because they show the relations, the state of intimacy, existing between the prisoner and the girl, and tend to make very probable the commission of the crime charged." The contrary view was adopted by this court in State v. Harris, 283 Mo. 99, 222 S. W. 420, but the Cason case, decided only three years later, expressly overruled the Harris case, and so caused our rule to accord with that generally prevailing throughout the country. [16 C. J., p. 608, 22 R. C. L., p. 1205.]

Now the offense of statutory rape is closely akin to, and, in fact, is practically that of fornication, the element of consent on the part of the female being immaterial, so that the rules governing fornication and adultery cases have been, with propriety, extended and applied to cases of statutory rape, as well as to certain other related offenses,

such as incest, seduction, bastardy, etc. The New York Court of Appeals in People v. Flaherty, 162 N. Y. 532, 57 N. E. 73 (statutory rape charge), had this to say concerning the reason for and development of the rule permitting the reception of such evidence where the charge is unlawful sexual intercourse: "The underlying idea being that it is probable that parties who have, prior to the offense charged, indulged in sexual intercourse, did commit the specific offense charged; that the adulterous disposition of parties both before and at the time of the act of sexual intercourse in controversy is a circumstance which may be received in corroboration of other evidence upon that issue; and so it was first held that witnesses might testify to acts of the parties indicating illicit relations as corroborative of the testimony offered to prove the particular offense charged in the indictment. . . . But it will be observed that, while evidence of this character is admissible, it is so for the purposes of corroboration only." But, as applied to a case of forcible rape, the elements of that offense and the nature of things considered, we think, at least insofar as prior uncomplained of acts of forcible rape upon the prosecuting witness are concerned, they have no tendency to "constitute an antecedent probability" of the commission of a particular subsequent act charged, and such testimony has no legitimate bearing upon any point in issue, and should, therefore, have been excluded.

For the error noted, the judgment is reversed and the cause remanded. All concur.