THE STATE v. ARTHUR KING, Appellant.—119 S. W. (2d) 277.

Division Two, August 17, 1938.

*D. T. Lawson* and *Emanuel Williams* for appellant.

*Roy McKittrick,* Attorney General, *J. E. Taylor,* Assistant Attorney General, and *Lawrence L. Bradley* for respondent.

ELLISON, J.—The appellant, a negro, was charged by indictment with raping a girl thirteen years old in August, 1935, in the city of St. Louis. He was convicted by a jury and his punishment assessed at imprisonment in the penitentiary for seventy years. His motion for new trial in the circuit court contained twenty-three assignments of error. Such of these as are urged in his brief will be discussed.

The first assignment predicates error on the overruling of appellant's motion to quash, which charged that in the proceedings leading to the selection of the grand jurors by whom the indictment was returned all negroes were unlawfully, arbitrarily and systematically excluded, notwithstanding there were numerous negroes in the city of St. Louis fully qualified for grand jury service. It is alleged this discrimination against negroes was solely on account of their race and color; was a violation of appellant's rights under the Fourteenth Amendment of the Constitution of the United States; denied him the equal protection of the law; and had been long con-

.inued. This assignment invokes the doctrine of the Scottsboro case, Norris v. Alabama, 294 U. S. 587, 79 L. Ed. 1074, 55 Sup. Ct. 579.

The learned Assistant Attorneys General make only one answer to this assignment. They say the attack upon the indictment came too late, in view of Sections 3514 and 3515, Revised Statutes 1929 (Mo. Stat. Ann., p. 3136), because not made until after the grand jury had been sworn. The grand jury was impaneled and sworn December 2, 1935; the indictment was found December 19, but was not filed until January 31, 1936. A copy thereof was served on the appellant on February 3. The motion to quash the indictment was not filed until February 14, two and a half months after the grand jury was sworn. Section 3514, supra, provides: "Any person held to answer a criminal charge may object to the competency of anyone summoned to serve as a grand juror, before he is sworn, on the ground that he is. the prosecutor or complainant upon any charge against such person, or that he is a witness on the part of the prosecutor. . . ." Section 3515 forbids any challenge to the array of grand jurors, or to any person summoned as a grand juror, save as authorized by Section 3514.

The State contends the only allowable departure from the procedure prescribed by these statutes is where the offense charged was committed *after* the grand jurors were sworn, so the accused could not possibly have challenged the jury for cause before they were sworn. On this point Carter v. Texas, 177 U. S. 442, 447, 44 L. Ed. 839, 20 Sup. Ct. 687, is cited. The case does recognize that exception but does not hold it is the only one—does not say the organization of the grand jury cannot be challenged by a motion to quash the indictment in any other circumstances.

The State further maintains the facts (if any) that appellant did not know a grand jury was being summoned or that he was under investigation, will not excuse his failure to challenge the grand jury before they were sworn, since the offense charged was committed three months earlier, in August, and he had ample time to make such challenges in the manner required by the statute. On this point reference is made to State v. Shawley, 334 Mo. 352, 366, 67 S. W. (2d) 73, 81, and State v. Christopher, 327 Mo. 1117, 1122, 39 S. W. (2d) 1042, 1043-4. These decisions do so hold, the Christopher case citing and quoting from several earlier cases.

The two statutes, Sections 3514 and 3515, have been a part of our criminal code from the beginning, Revised Statutes 1835, sections 2 and 3, page 79. It is said in State v. Bleekley, 18 Mo. 428, 430, decided in 1853, that in early days many convictions were overturned in this State because of some disqualification of jurors discovered during or after the trial. The Legislature determined to put a stop to the practice, and enacted Sections 3514 and 3515, supra, along with other statutes. But it is to be remembered that in those days, and up to the

adoption of the present Section 12, Article II of our State Constitution in 1900, felonies were prosecuted only by indictment, and misdemeanors could be. Grand juries had not fallen into disuse so much as now. In the majority of cases persons charged with criminal offenses, especially felonies, were bound over to the next term of the circuit court to await the action of a grand jury. They were literally, as Section 3514 says, "held to answer a criminal charge;" and they knew it. So in most instances there was nothing unreasonable in making the swearing of the grand jury the dead line, and requiring all challenges to be presented theretofore. But the courts applied the statute with great strictness. It was held in the Bleekley case, supra, and in State v. Welch, 33 Mo. 33, decided in 1862, that challenges to a grand juror can be made only for the causes stated in the statute; and State v. Connell, 49 Mo. 282, 287, ruled that defendants not apprehended were absolutely prohibited by the statute from challenging the grand jury; as were also defendants who failed to make their challenges in time even though they did not know a grand jury was in session, or that they were under investigation. [See, also, State v. Washington, 242 Mo. 401, 408, 146 S. W. 1164, 1165-6.]

Nevertheless, this court recognized in State v. Warner, 165 Mo. 399, 414, 65 S. W. 584, 587, 88 Am. St. Rep. 422, that the narrow terms of the statute cannot deprive a defendant of his constitutional rights. That case was like this one. The defendant was a negro and filed a motion to quash the indictment claiming he was denied equal protection of the law under the Fourteenth Amendment because negroes were discriminated against and omitted in the selection of the grand jury. The decision held he was entitled to raise the constitutional question notwithstanding the statute limits the challenging of a grand juror to the grounds that he is a prosecutor or complainant against the accused, or a witness for the prosecution. It was further ruled that the defendant, who was in custody, was not barred from making that attack upon the grand jury after they were sworn, the statute to the contrary notwithstanding, since he alleged in the motion that he had requested and been denied the right to be present in court and challenge the grand jurors before they were sworn.

The Warner case and Norris v. Alabama, supra, undoubtedly support appellant's contention here that he can raise his constitutional question although it is not included in the statute as one of the grounds of challenge. But he makes no effort either by pleading or proof to excuse his failure to raise the question within the *time* fixed by the statute, i. e., before the grand jury was sworn. All the evidence shows without dispute that appellant was arrested on August 31, two days after the alleged rape, thereby disclosing that he was held to answer the charge for over three months before the grand jury was impaneled. He should have conformed to the requirements of the statute, or have pleaded and proved facts which would excuse his

failure to do so. In view of this condition of the record the assignment must be overruled without considering the motion to quash on its merits; and also without considering appellant's further assignment complaining of the court's refusal to order the issuance of a subpoena *duces tecum* bringing in the grand jury wheel and the jury lists for specified years, to be introduced in evidence in support of the motion.

Another group of assignments charges that the evidence was insufficient to support the verdict. The prosecuting witness, E. F. (we shall omit from the opinion the names of the three young white girls involved) was a boarding pupil at Hawthorne School, a private school for normal children and problem children below high school age, conducted by Mrs. Blanche Omohundro in St. Louis. The prosecutrix and two other girls, J. B. a mentally retarded child fourteen years old and M. W., fifteen years old, occupied a room on the third floor, each having a separate bed. The appellant worked at the institution as butler, janitor and utility man. For a time he acted as dancing teacher, and there is evidence that he exercised some authority over the pupils.

The prosecutrix testified to eight violations of her person committed by the appellant between January, 1935, and August 29, 1935. On the first occasion he came into her room on Sunday while she was alone and tried to have sexual intercourse with her. One of the other girls, J. B., came just as appellant was leaving and noticed the bedding was disarranged. The prosecutrix visited her mother that day but did not tell her anything about the assault. About two weeks later in the basement he attempted an act of sodomy upon her. She told her two roommates about that but on the advice of one of them, M. W., refrained from reporting it to Mrs. Omohundro because the latter was in sorrow from the recent death of her father or a very close friend. (On cross-examination she fixed the date of this disclosure to her roommates two or three weeks later.) Some two weeks after the incident last mentioned, when the prosecutrix and her roommate J. B. were in the butler's pantry getting some canned goods, the appellant forced her to submit to a sexual contact, but whether he effected penetration she was not sure, though she thought he did. She seized her roommate's hand and the latter remained throughout the incident but was unable to say whether there was a penetration because she looked out the window.

During the month of May two or three weeks after M. W. had left the school, appellant came to the room occupied by the prosecutrix and J. B. while they were asleep at night in adjacent beds. When she woke up he was in the act of sexual intercourse with her and there was penetration. Appellant put his hand over her mouth and prevented her from screaming. J. B. was a witness at the trial and generally corroborated the testimony of the prosecuting witness with respect to the three incidents above mentioned at which she was

present. As regards the last one she said when she woke up she heard the prosecutrix's bed "jiggling" and that appellant was underneath the bed cover on top of the prosecutrix. Then or about that time in the prosecutrix's presence appellant also attempted to have intercourse with J. B. but she fought him off. Shortly thereafter both girls decided to complain to Mrs. Omohundro about these assaults but they weakened and merely told her appellant had been trying to get smart with them and had shown them a contraceptive rubber device wrapped in cellophane. The appellant called them yellow rats and gutter rats for telling on him and ordered them to retract, which they did.

That summer after J. B. also had left the school, appellant again attempted an unnatural sexual connection with the prosecutrix while she was in the fruit cellar. A little later she was outdoors talking to some other girls and appellant called to her several times from upstairs to come up and fix the towels in the bathroom. She was suspicious of his intentions but finally went, and he committed an act of sodomy upon her. Appellant made still another vile assault upon her, per ostium, before the rape charged, which occurred on Thursday, August 29, 1935. The prosecutrix testified that on this occasion she was in the basement and appellant had sexual intercourse with her while she was standing on a pile of boards used for painting. There was penetration. She was asked if he hurt her and she answered "I believe he did."

The prosecutrix was examined on November 18, a little over eleven weeks after the alleged rape, by Dr. A. L. Cavanaugh, chief physician in the public venerial clinic maintained in St. Louis. He found a ruptured hymen and evidence of an old tear in the left wall of the vagina, indicating there had been an entry.

The appellant was arrested two days after the alleged rape upon the prosecutrix. But his apprehension did not come through any disclosures made by her. Her roommate M. W. upon leaving the school went to Texas and in July wrote the appellant three letters one of which he answered the same month. The girl's father found the appellant's letter to her and turned it over to the St. Louis police. The police arrested appellant and took him to headquarters for investigation. Under questioning he admitted his letter was authentic and told the police the letters from M. W. to him were under a carpet in his room at the school. They were found there. The one introduced in evidence addressed him in endearing terms. It referred at some length to certain menstrual disturbances she had been going through but stated she had not needed to take "that medicine" since she came (to Texas). She also said in the letter "I knew before I left that (E., the prosecutrix) would be the next slave." The appellant's letter to M. W. by plain inference refers to continued intimate relations between her and him; asks her if she has had intercourse with

a boy since she left school, and volunteers to advise her if she has; and further makes suggestions about her diet and exercise to prevent a recurrence of her trouble.

The reference to the prosecutrix in the letter from M. W. caused the police to confront appellant with her. In his presence she admitted his relations with her, and he confessed in part to six of the eight incidents she narrated at the trial, as already outlined. The date of the final rape was given by him as August 22, instead of August 29, as charged in the indictment, and he said there was no penetration. The confession was in writing. The appellant repudiated it at the trial and testified that as the police were taking him to headquarters one officer said they ought to make him jump out of the car and then shoot him; that they beat him repeatedly on the body at headquarters, and told him they would kill him if he did not confess. He said the confession was written up in advance based on statements made by the prosecutrix and that they compelled him to sign.

The police sergeant who had him in charge denied he was subjected to any violence at any time. He also testified appellant was taken to a hospital and examined after the confession was signed, and was photographed nude, front and side, and no bruises were on him. Appellant objected on constitutional grounds to the testimony of the physician who made the examination, and the testimony was excluded. But he admitted being taken to the hospital and photographed, as stated. However, he insisted this was *before* he was beaten and had signed the statement. The trial court after hearing all this evidence pro and con, ruled the confession was prima facie voluntary and admitted it in evidence. We will say here, the evidence for the State on this issue was substantial—we think preponderating—and that there was no error in the ruling. [State v. Christup, 337 Mo. 776, 781, 85 S. W. (2d) 1024, 1026.]

■ The appellant denied having any sexual relations with the prosecutrix. He intimated she had made unfounded charges against him because she was mad at him. His counsel in their brief stress the fact that the several alleged sexual acts detailed in the State's evidence all were committed in the school where people were near, or coming and going; that the prosecutrix made no outcry or complaint, and that her testimony about whether there was penetration was hesitant and indefinite. We shall not go into the evidence for the defense at length, since that only raised a jury question if the State made a submissible case, which we think it did.

■ Appellant contends the State's case failed because the testimony of the prosecutrix was not corroborated. This contention is made apparently on the theory that the State relied on *forcible* rape to obtain a conviction. It makes no difference whether force was used or not, since carnal knowledge of a female child under the age

of 16 years is rape under Section 3999, Revised Statutes 1929 (Mo. Stat. Ann., p. 2801). [5] And corroboration is not essential to prove the act of sexual intercourse, State v. Mitchell (Mo. Div. 2), 86 S. W. (2d) 185; at least unless the testimony of the prosecutrix is contradictory and in conflict with physical facts, the surrounding circumstances and ordinary experience. [State v. Wade, 306 Mo. 457, 465, 268 S. W. 52.] But if corroboration is needed it is in this record: the appellant's confession; the testimony of Dr. Cavanaugh concerning the condition of the prosecutrix's genital organs, see State v. Sikes (Mo. Div. 2), 24 S. W. (2d) 989; State v. Scott, 172 Mo. 536, 541, 72 S. W. 897, 898; and the proof of prior sexual attacks made upon the prosecutrix, two of which were witnessed by a third party, her roommate J. B.

Another assignment in appellant's brief charges error in the admission of evidence tending to show he committed other crimes of the same nature as that with which he stood charged. We suppose this assignment is based on the third, seventh, eighth and twelfth specifications in the motion for new trial. There are several items of testimony to which these complaints might refer, but the evidence went in without objection. However, the assignment does sharply raise the question whether it was error to permit the introduction of the letter from M. W. to appellant and his letter to her disclosing improper relations between them.

These letters undoubtedly were damaging to appellant's case, but we have come to the conclusion that they were competent. The matter first came up when the appellant objected to the admission in evidence of his written confession on the ground that it was coerced, and he was being cross-examined with respect thereto in a preliminary hearing out of the presence of the jury. The State was attempting to show the confession was voluntary and the various steps that led to it: first, confronting the appellant with the letter he had written the girl M. W. in Texas, and which her father turned over to the police; next, acknowledgment of the authorship of that letter by the appellant, together with an admission that he had received letters from the girl M. W.; third, the finding and examination of these letters, one of which contained a reference to the prosecutrix; fourth, bringing the prosecutrix before the appellant whereupon he admitted his attacks upon her as she stated, and as detailed in the written confession.

Undoubtedly the State had the right to use the letters in developing its side of this issue. While the question arising on the admission of the confession was not the guilt or innocence of the appellant, but was whether the confession was voluntary, still, in proving the latter the State had a right to show how it was obtained. At one time counsel for appellant, themselves, were of that view and withdrew

their objections to the letters, for the time being. The appellant identified the letters and did not refuse to testify about them on the constitutional ground that his testimony would be self-incriminating.

But while the letters were identified and ruled competent in the preliminary hearing outside the presence of the jury, still, after the court admitted the confession and the trial was resumed the State did not introduce the letters before the jury on that issue though the appellant still maintained the confession was involuntary. They were brought into the case in another way. After the State had rested and the appellant had taken the stand in his own behalf, his counsel on direct examination asked him this question: "Now, during the time that you worked there did you ever get smart, as they say, with any of these girl students?" And appellant answered "No, sir." Later in the direct examination his counsel came back to the subject, inquiring: "And during that time you say you never had occasion to get smart with those girls, particularly this (the prosecutrix)?" And the appellant said he had not. On cross-examination the assistant circuit attorney asked appellant whether he meant, in testifying on direct examination, that he didn't get smart with any of the girl students in an amorous way or by having sexual intercourse with them, and appellant said that was his meaning.

Thereupon, State's counsel proceeded to ask the appellant in some detail if he hadn't had a clandestine relation with M. W. and exchanged letters with her containing endearing terms. He refused to answer until further advised by his counsel. Later he denied much of the foregoing and the State offered his letter and M. W's. letter in evidence to impeach him. His counsel objected on the grounds: that this cross-examination went beyond the range of the direct examination in violation of Section 3692, Revised Statutes 1929 (Mo. Stat. Ann., p. 3242); that appellant's relations with a third party M. W. were immaterial, and he could not be impeached on an immaterial matter; that the evidence did not test his credibility, was cumulative, tended to prove an independent crime, was highly prejudicial, and that the State was bound by the witness's answer.

There is nothing in the first contention, that the cross-examination was outside the bounds set by the direct examination. When appellant's counsel asked, "did you ever get smart, as they say, with any of these girl students," he obviously was referring to sexual advances; and appellant testified on cross-examination that was what he meant to deny when he answered the question in the negative. The subject clearly was thrown open to inquiry on cross-examination, so far as the statute was concerned.

But there is more substance to appellant's second contention: that his sexual relation with a third party, M. W., a girl only fifteen years of age, constituted an independent crime; that the fact was

immaterial to this case; that appellant could not be impeached on such immaterial matters by introduction of the letters; and that the evidence was highly prejudicial. In fact appellant's view was squarely upheld in a recent decision of this court. [State v. Buxton, 324 Mo. 78, 85, 22 S. W. (2d) 635, 638 (4).] In that case the prosecution was for robbery. On direct examination in answer to a question put by his own counsel the accused denied he had committed any robberies at all on the night of the robbery charged. The State in rebuttal was permitted to prove he did commit several robberies that night. This court held that was error, saying the impeachment was on an immaterial matter.

The rule is well established—with certain recognized exceptions—that proof of the commission of other independent crimes by the accused is not admissible as evidence of his guilt of the crime charged. But that is not because such evidence has no tendency to point to his guilt and is wholly immaterial. On the contrary, one of the first things law enforcement officers do in the solution of crimes is to search for and investigate persons known to have committed or believed to be disposed to commit similar crimes. Especially is this true of sexual crimes and above all, those that are moronic or degenerate. Our jurisprudence excludes proof of the commission of independent crimes by the accused as a matter of principle, holding to the theory that in the just enforcement of the law less harm will be done by rejecting such evidence than would be suffered by accused citizens if convictions were made to turn upon it. It is said there is "impropriety" in such inferences; that they are "unjust;" and that they deprive a defendant of the presumption of innocence and the constitutional right to be informed by indictment or information of the charge against him. [State v. Myers, 82 Mo. 558, 563, 52 Am. Rep. 389; State v. Hyde, 234 Mo. 200, 224, 136 S. W. 316, 322, Ann. Cas. 1912D, 191; People v. Molineux, 168 N. Y. 264, 291, 61 N. E. 286.]

Yet it is settled that such independent crimes may be proven to establish motive or intent, State v. Buxton, supra, 324 Mo. l. c. 82, 22 S. W. (2d) l. c. 636,—a mental state akin to any other predisposition to commit the crime. And almost universally a like exception is allowed in prosecutions for crimes involving the sexual relation, such as adultery, incest, lewdness, rape, seduction and sodomy. [16 C. J., sec. 1144, p. 592, sec. 1167, p. 602, sec. 1171, p. 604, sec. 1194, p. 608, sec. 1197, p. 611, sec. 1200, p. 611.] In these cases prior (and in some jurisdictions, subsequent) acts of the same kind between the accused and the prosecutrix may be proven as *corroborative* evidence. That rule is followed in this State, as to statutory rape, the reason given being that such prior acts "constitute the foundation of an antecedent probability." [State v. Cason, 252 S. W. 688; State v. Guye, 299 Mo. 348, 367, 252 S. W. 955, 959 (5); State v. Cooper, 271 S. W. 471,

474(7); State v. Hersh, 296 S. W. 433, 436(11); State v. Baker, 318 Mo. 542, 547, 300 S. W. 699, 701(7); State v. Lebo, 339 Mo. 960, 965, 98 S. W. (2d) 695, 698(5).]

Now while it is true that this rule does not admit proof of prior sexual aggressions by the accused upon a *third* party, yet it is a fact that such collateral acts also may "constitute the foundation of an antecedent probability." Undoubtedly, where there is evidence to support a charge that the accused committed statutory rape, proof that he had recently theretofore perpetrated the same or other like degenerate acts upon other female children of tender years would be corroborative, just as proof of his prior good character would tend to repel the charge. And although such proof cannot be introduced by the State to help out its case in chief, yet we think it should be allowered to do so in rebuttal when the defense initially has made a showing on that question. Certainly the accused ought not to be permitted to tender the issue and gain the benefit of so doing, and then contend there is no such issue, or that the question is immaterial, when the prosecution offers to meet it. It would be like letting the defendant put his character in issue and then denying to the State the right to introduce evidence to the contrary. Owing to the difference in its facts, we shall not go so far as to say here that State v. Buxton, supra, 324 Mo. l. c. 85, 22 S. W. (2d) l. c. 638(4) should be overruled; but we do hold the decision is not authority on the question presented by this record, and that the trial court did not err in admitting the letters in evidence.

█ The appellant further contends that when the assistant circuit attorney cross-examined him about his clandestine relations with the girl M. W. and their letter writing, in an effort to elicit from him discrediting admissions of guilt with respect to these collateral matters, the State was bound by his answers and could not introduce the letters to contradict him. That is the rule where the State injects the question into the case. [State v. Ansel (Mo. Div. 2), 256 S. W. 762, 764(6); State v. Bagby, 338 Mo. 951, 964, 93 S. W. (2d) 241, 248 (11).] But where, as here, the defense tenders the issue the State has a right to meet it.

█ Error is assigned on the failure of the trial court to instruct on all the law of the case. The first complaint is that no instructions were given on attempted rape and common assault. Since there was substantial evidence showing the rape was consummated the court was not authorized to instruct on attempted rape, in view of the express prohibition of the statute, Section 4443, Revised Statutes 1929 (Mo. Stat. Ann., p. 3051); State v. Gadwood, 342 Mo. 466, 116 S. W. (2d) 42. And since the evidence showed that if any crime was committed on August 29, 1935, the date charged in the indictment, it was statutory rape, an instruction on common assault would have

been improper. [State v. Miller, 263 Mo. 326, 335, 172 S. W. 385, 388, Ann. Cas. 1916A, 1099.]

 Further complaint is made of the court's failure to instruct as a part of the law of the case, that when the testimony of the prosecutrix is contradictory and contrary to human experience her story must be corroborated by other evidence. No authority is cited in support of this contention. In State v. Patrick (Mo. Div. 2), 15 S. W. 290, 293, it was held error to refuse such an instruction when *requested* by the defendant, in view of the facts of the case. In State v. Patrick, 107 Mo. 147, 169, 17 S. W. 666, 672, where the testimony of the prosecutrix was wholly uncorroborated and it was undisputed that she had made no complaint or disclosure of the rape, and there were no outward indicia of violence to her person or clothing, this court said the trial court should have instructed on these facts as a part of the law of the case. In State v. Hudson (Mo. Div. 2), 289 S. W. 920, 921 (4) the fact that the prosecutrix was corroborated by facts and circumstances was held to "render unnecessary any cautionary instruction." It does not appear from the opinion whether such an instruction had been requested. The testimony of the prosecutrix was corroborated in the instant case, so we overrule appellant's contention without deciding in what circumstance, if any, the trial court should give an instruction on corroboration.

Appellant's brief does not contain a part designated Assignment of Errors. We have reviewed all the assignments appearing under his Points and Authorities except a few that are not supported by the record facts, and have also discussed several other questions. Perhaps three other matters should be touched upon that are mentioned in the Argument in his brief.

 The appellant testified that when the grand jury visited the jail the "warden" brought him before them, announced his name, and asked the jurors if they did not know him. The jurors looked at him and at each other but said nothing. Appellant declared this was before the indictment was returned. The assistant circuit attorney testified the grand jury did not visit the jail until after all indictments had been voted. But either way, there was nothing in the incident to vitiate the indictment.

 As already stated, the witness J. B. generally corroborated the testimony of the prosecutrix concerning three incidents in which the latter's person was violated by the appellant in January, February and May, 1935. During this period J. B. was the prosecutrix's roommate at the Hawthorne school. On direct examination she testified she attended the school first as a boarding pupil and then as a day pupil, but couldn't remember the dates. On cross-examination she said she entered the school in September or October, 1934, and left on June 14, 1935. Then she said that in May, 1935, she was a day

pupil and a little later that she was a boarding pupil. If she was a day pupil in May, 1935, she could not have witnessed the rape she testified she saw in that month because it occurred at night. On re-direct examination she said she was a boarding pupil at that time.

Thereupon the State recalled Mrs. Omohundro as its next witness, and asked her the dates of the girl J. B's. attendance at the Haw-thorne school as a resident pupil and as a day pupil. The appellant objected on the ground that the rule requiring the exclusion of wit-nesses from the courtroom had been enforced during the trial and that Mrs. Omohundro after completing her own testimony as a wit-ness for the State had remained in the courtroom, and was present while the girl J. B. had testified. The assistant circuit attorney contended in effect that he had been surprised by the testimony of the witness J. B.; that she had been forgetful and vague about the dates of her attendance at school; that as to these dates, which were a matter of school record, he should be entitled to recall Mrs. Omo-hundro the school principal. A long argument between counsel fol-lowed and finally the State's attorney withdrew Mrs. Omohundro as a witness with leave to call her in rebuttal on that question.

Later, when the defense was presenting its case, Mrs. Omohundro was recalled by appellant and the State's attorney on cross-examina-tion again asked her the same question. Counsel for appellant ob-jected that the State could not rehabilitate its case by introducing testimony from the witness on an issue that was a part of the State's main case. Thereupon the matter was once more deferred for time to consult authorities. Finally near the end of the trial the State recalled Mrs. Omohundro in rebuttal and proved by her that the girl J. B. entered the Hawthorne school in September, 1934, and re-mained as a boarding pupil until June, 1935; that she reentered the school in September, 1935, as a day pupil and continued as such until January, 1936. The appellant objected to this testimony on the ground that it was improper rebuttal and was not introduced to meet any *new* testimony presented by the defense in making its own case.

We think the court's ruling was proper under the circumstances. There is nothing to indicate the State's counsel was guilty of laches or connivance in permitting Mrs. Omohundro to sit in the courtroom after she had completed her own testimony. The forgetfulness of the girl J. B. about the time of her attendance at the school was hardly to be anticipated and the dates were recorded. The matter rested largely within the discretion of the trial court. [State v. Thompson, 338 Mo. 897, 902, 92 S. W. (2d) 892, 894; State v. Compton, 317 Mo. 475, 477, 296 S. W. 137, 138.]

The same may be said of the contention that Mrs. Omohundro's testimony was not proper rebuttal. The facts recited above show the State tried to meet the issue as soon as it was raised in the cross-

examination of appellant's counsel. The trial court was fully warranted in permitting the testimony to be introduced before the end of the trial. [Sec. 3681, R. S. 1929, Mo. Stat. Ann., p. 3227; State v. Wright, 339 Mo. 41, 43, 95 S. W. (2d) 1159; State v. Higginbotham, 335 Mo. 102, 111, 72 S. W. (2d) 65, 69.]

Complaint is made of the argument of Assistant Circuit Attorney Flynn. The most serious impropriety we find is when he was appealing to the jury to inflict a severe punishment and said "If you run into a mad dog, would you tie him up and feed him." But when appellant's counsel objected and asked that the attorney be reprimanded, the trial court ruled: "It will be sustained, stricken from the record and the jury instructed to disregard it." Appellant's counsel asked for nothing more.

We find no reversible error. The judgment is affirmed. All concur.