STATE of Missouri, Respondent,

v.

Russell SMITH, Appellant.

No. 50131.

Supreme Court of Missouri,
Division No. 1.

April 13, 1964.

Rendlen & Rendlen, Hannibal, Charles S. Scott, Scott, Scott, Scott & Jackson, Topeka, Kan., for appellant.

Thomas F. Eagleton, Atty. Gen., Clyde Burch, Asst. Atty. Gen., Jefferson City, for respondent.

WELBORN, Commissioner.

The appellant, Russell Smith, was charged by information in the Monroe County Circuit Court with felonious assault in violation of Section 599.180, RSMo 1959, V.A.M.S., by throwing acid on Ted Donovan on October 6, 1960. A jury found the appellant guilty and fixed his punishment at two years' imprisonment. After his motion for new trial was overruled, appellant took this appeal from the judgment and sentence entered on the verdict.

The state's evidence showed that the appellant and Donovan, both residents of Monroe City, had known each other for twenty years and, prior to the events in question, had apparently been on friendly terms. Donovan had lived in Macon in 1958 and 1959, but, on returning to Monroe City, he had visited in the Smith home three or four times a week and frequently took meals with the Smith family. Donovan was a carpenter and from time to time employed two of Smith's sons.

On October 6, 1960, Donovan went to the Smith house around noon to find out whether the boys would be available to work the next day on a barn. The appellant and his sons were cleaning turtles at the time. Smith told Donovan to come back that evening, when they would know how they got along with the turtles and whether the boys could work for Donovan the next day.

According to Donovan, he returned to his work at a job at Clark's Motor Company in the afternoon. At about 6:00 P.M., he drove to the Smith house and parked beside Smith's panel truck in front of the house. He walked to the front door and knocked twice. In Donovan's words: "I knocked on the door the second time and just as I knocked I seen his wife shoot out the kitchen. She had the light going back in the kitchen there. * * * No lights in the other three rooms whatsoever * * * Well, just about the time she slammed the door he hollered 'Come on in Ted, I want to show you something,' or 'I got something to show you,' and I just

opened the door and stepped in and had my left hand on the door knob, on the front door knob, and I said 'Where you at Russ?' and he said, 'Right here,' and I turned to the left and, boy, that is when I got it. * * * Well, he threw something in my face and then he tried to grab me and I pushed him back and got out the door and got in my car and got to the cemetery, and I was just burning, my eyes were as black as they could be and swelling, and I throwed a sweat shirt over my face and laid down underneath the hydrant. * * * I asked him, I said 'What is this all about?' and he said 'You know, you know, you know', and that is all that was ever said."

Donovan stated that he did not see the appellant at the time of the incident, but he identified the voice which he heard as that of Smith.

The next day Donovan went to a hospital in Hannibal where he remained for seven or eight days. Dr. W. J. Smith, M.D., examined Donovan at the hospital and found acid burns about his face and eyes.

Billy Hunter testified that Donovan came to where he was working in the cemetery at about 8:00 o'clock on October 6, and that his face was red. On cross-examination, Hunter stated that Donovan first said that he got something in his face while painting at the Ford garage. He said nothing about anything happening at Smith's. According to Hunter, he went to the Smith house at around 9:30 P.M., and Smith asked whether or not he had seen Donovan and told Hunter that he had thrown muriatic acid in Donovan's face.

Hunter's wife testified that Smith came by her house on the evening in question and asked her whether or not she had seen Donovan. According to Mrs. Hunter, Smith said: "Well, I done him the way I done the other one."

Henry and Eula Medford, husband and wife, testified that one night, the date of which they could not fix, Smith came by their house and said: "I put another man

in the hospital * * * Ted Donovan. I throwed acid in his face."

Sheriff Mark Bodine of Monroe County placed Smith under arrest in his home on October 7. According to the sheriff, Smith at that time said that he had put Donovan in the hospital. According to Bodine, Smith said: "Well, he came up to my house here last night and I saw him coming and I got over here behind the door and he knocked at the door. * * * I saw who it was and I told him to come in and he opened the door and he stepped around the door and I was behind and I throwed this acid in his face." On rebuttal, Bodine stated that Smith told him that Donovan "was running his wife."

Two members of the Missouri State Highway Patrol testified that they heard Smith, on October 7, state that he had thrown muriatic acid into the face of Donovan. One of the patrolmen testified that, at the Smith house, he asked for the container from which the acid had been thrown. One of the daughters of Smith went into the bedroom adjoining the living room into which the front door opened and picked up a jar off the floor behind the bedroom door and gave it to the patrolman.

According to Doctor Smith, muriatic acid is a strong acid, having capacity to destroy flesh. It is used in soldering.

The testimony of the defense endeavored to show that the appellant was not home at the time of the alleged offense and further that the acid was thrown by one of appellant's daughters in order to ward off Donovan's improper advances. Appellant and his son, Jack, testified that the two of them drove together to Quincy, Illinois, 38 miles from Monroe City, on the afternoon of October 6. They arrived in Quincy at about 3:00 or 3:30. After attending to some matters, including the sale of turtles to, and purchase of bait from, Yancey's Fish Market, they left Quincy at around 6:00 P.M. According to them, the driving time from Quincy to Monroe City was about an hour. Jack testified that it was at least 7:00 P.M. by the time they got back to Monroe City.

Orval Yancey, the operator of the fish market, testified that he purchased turtles from appellant on the afternoon of October 6 and saw him then at his place of business in Quincy. He stated that Smith left there at about 5:30.

The appellant's daughter, Carolyn Marie Smith, who was 15 years old at the time of the incident involved, testified that, on the date in question, she and an older sister, Shirley Mae, returned home after grocery shopping at about 5:00 or 5:30. Their mother, their sister, Nancy, aged three, and Donovan were in the house when they returned. Donovan was in the living room, watching television and holding Nancy. According to Carolyn, she, her mother and Shirley went to the clothes line in the back yard to take some dry clothes off the line and hang out others. Carolyn got an arm load of dry clothes and took them to the house, entering the house at the rear and going through the living room where Donovan was and into the adjoining bedroom where she laid the clothes on the bed. According to Carolyn, "I heard some commotion behind me like someone was behind me and I turned around and it was Ted Donovan, and he grabbed my arm and he said, 'Come on, it won't take long. I am not going to hurt you,' and he said something bad that I don't want to repeat if I don't have to, and he grabbed my arm and I swung around and I grabbed the acid and threw it in his face." She testified that the acid was in an open jar which had been placed in a "cubby hole" in a dresser where a door had come off. On cross-examination, Carolyn said that her father had put the acid there three to five days previously for protection "because that wasn't the only time he has tried to bother me."

Shirley Mae testified that Donovan was in the house when she and her mother and Carolyn went to the clothes line and that, after Carolyn took in some dry clothes, she heard someone screaming and she and her

mother ran into the house and found Carolyn "emotionally upset" and saw Donovan driving off in his car.

Both Carolyn and Shirley testified that the appellant was not present at the time of this incident and that he returned home at 6:30 or 7:00 P.M. According to the girls, at around 9 o'clock, Billy Hunter came by the house and told the appellant that Donovan had got some paint thinner in his eyes. According to them, Smith told Hunter that it wasn't paint thinner, that it was acid and he got it at Smith's. Another son, Freddie, also testified that he was present and heard such conversation between his father and Hunter.

The daughters, as well as Samuel Gillespie who later purchased the house from Smith, testified that there were marks from the acid on the floor of the bedroom, but that there were none in the living room.

The appellant, when asked why he had told the sheriff that he had thrown the acid, stated: "My daughters were all upset, and my whole family was upset, and they had to go to school, and there had been an incident happened ahead of this that put their name in the paper, and I didn't want their name back in and I told them I would just say I did it."

In rebuttal, Donovan denied that Carolyn threw acid on him.

On this appeal, the appellant contends the state's evidence failed to establish, beyond a reasonable doubt, the appellant's guilt. The appellant reaches this conclusion by arguing that the state's case was based "upon a circumstance that placed Russell Smith in his home on the night of October 6, 1960, at 6:00 P.M." The appellant dismisses the state's testimony regarding appellant's admissions as "vague" and "probably not probative of the facts." He then compares the state's case with the evidence produced by appellant and concludes that the state failed to show guilt beyond a reasonable doubt and to a moral certainty.

■ The function of this court, insofar as sufficiency of the evidence is concerned, is to determine whether or not the state's evidence, viewed in the light most favorable to the verdict, is legally sufficient to induce a belief beyond a reasonable doubt in the minds of jurors of average reason and intelligence. State v. Emrich, Mo.Sup., 250 S.W.2d 718, 725(6-8). We do not attempt to determine whether the charge has been proved beyond reasonable doubt as that is an issue for the jury under proper instructions. State v. Odom, Mo.Sup., 353 S.W.2d 708, 710(2). The recital of the evidence presented by the state leaves no doubt that, if believed, it constituted substantial evidence of the defendant's guilt.

■ Related to his contention in this regard is the appellant's further contention that the state's case was based upon circumstantial evidence and that such evidence did not exclude every reasonable hypothesis except the guilt of the appellant. However, the state's case was not based upon circumstantial evidence. There was direct evidence, from Donovan's identification of his voice (State v. Hall, Mo.Sup., 7 S.W. 2d 1001, 1004(2)), of appellant's presence at the time of the occurrence. Such evidence, coupled with the appellant's admissions, was sufficient to prove directly the appellant's guilt. This conclusion also answers appellant's claim of error in the court's refusal to instruct on circumstantial evidence. Such instruction is required to be given only in cases based solely on circumstantial evidence. State v. Cox, Mo. Sup., 352 S.W.2d 665, 670(4). Admissions of guilt are direct evidence thereof and make instruction on circumstantial evidence unnecessary. State v. Hutsel, 357 Mo. 386, 208 S.W.2d 227, 231(9, 10).

The appellant urges error on the part of the trial court in refusing to permit the appellant to show that Donovan, for a month prior to October 6, 1960, had demonstrated an improper interest in the girls in the Smith household and had made improp-

er advances towards them and one of their classmates who was a visitor in the home. In connection with the appellant's opening statement, the court ruled that evidence only of the action of Donovan on the date of the offense would be admitted. An offer of proof of actions on other occasions was made at that time and also in connection with the testimony of the daughters and a schoolmate, Bonnie Sue Carroll. The offer was rejected on each occasion.

The defense in this case was alibi. However, the appellant went further than usual in his attempt at proof of such defense. He not only produced evidence of his absence at the time and place of the crime, but also evidence, by way of her testimony, that his daughter Carolyn actually threw the acid.

■ The defense against a criminal charge that the act upon which the charge is based was in fact done by another without the assistance or participation of the defendant is recognized. 22A C.J.S. Criminal Law § 622b, page 449; 15 Am.Jur., Criminal Law, Section 331, page 22; Wharton on Criminal Evidence (12th ed.), Section 189, page 378. As with any defense, generally speaking, competent evidence having probative value on such issue should be received. Commonwealth v. Murphy, 282 Mass. 593, 185 N.E. 486; 1 Wigmore on Evidence (3rd ed.), Section 142, page 576.

■ Under the theory of the defense in this case, the proof of misconduct on Donovan's part toward Carolyn was a material matter. Her assumption of responsibility for the throwing of the acid was inseparably bound to her charge of Donovan's misconduct. Therefore, evidence tending to corroborate the fact of Donovan's misconduct related to a material issue in the case and competent evidence relevant to that issue should have been received. The matter was material because of its tendency to support Carolyn's version of the event giving rise to the charge by showing of the

existence of a motive for her action. Evidence bearing on the matter would also tend to support the appellant's explanation that he admitted having thrown the acid in order to shield his daughters. Finally, evidence in this regard would also tend to affect Donovan's credibility by showing that in this case he had particular reason for charging that another committed the offense.

■ In the final analysis, the admissibility of the evidence offered by appellant and excluded by the trial court must depend upon its relevancy. Of course, the general rule is that evidence of prior acts is not available for proof of the doing of an act in issue. This rule is usually applied in criminal cases to exclude evidence of a separate and independent crime by the accused. See State v. Spinks, 344 Mo. 105, 125 S.W. 2d 60, 63(3); State v. Lebo, 339 Mo. 960, 98 S.W.2d 695, 697(3). However, the basis for exclusion of such evidence in criminal cases is generally not lack of relevancy, but the policy consideration of avoidance of prejudice to the defendant by evidence of offenses other than the one with which he stands charged. State v. Atkinson, Mo. Sup., 293 S.W.2d 941 943(4); 1 Wigmore on Evidence (3rd ed.), Section 29a, page 412, Section 55, page 449. The exceptions to that rule, which apply in criminal cases involving sexual misconduct, recognize the relevancy of evidence of prior similar activities on the part of the defendant in such cases.

"Where the proof of other offenses may tend to establish motive, or intent, or absence of accident or mistake, or identity of the defendant, or a common scheme or plan embracing the commission of separate similar offenses so interrelated to each other that proof of one tends to establish the other, such other offenses are widely held under these circumstances to be admissible in proof. State v. Garrison, 342 Mo. 453, 116 S.W.2d 23, 24. And similarly, the exception is often recognized

in prosecutions for crimes involving sexual relations such as adultery, incest, sodomy, seduction, rape and lewdness. State v. Richardson, 349 Mo. 1103, 163 S.W.2d 956; State v. King, 342 Mo. 975, 119 S.W.2d 277; State v. Henderson, 243 Mo. 503, 147 S.W. 480; State v. Scott, 172 Mo. 536, 72 S.W. 897. In 22 C.J.S. Criminal Law, § 691, page 1160, it is said: 'In the case of crimes involving illicit sexual relations or acts, other acts of the same character may ordinarily be shown, not as proof of independent substantive offenses, but as corroborative evidence to show a disposition upon the part of accused and as tending to support the specific offense for which he is being tried.' See authorities there cited. See also, State v. Cason, Mo.Sup., 252 S.W. 688, and cases there cited. In State v. King, supra (342 Mo. 975, 119 S.W.2d 283), we held: 'In these cases (thereinabove cited) prior (and in some jurisdictions, subsequent) acts of the same kind between the accused and the prosecutrix may be proven as corroborative evidence.'" State v. Kornegger, 363 Mo. 968, 255 S.W.2d 765, 768. See also, State v. Burkhart, Mo.Sup., 242 S.W.2d 12, 14(4); State v. Tyler, Mo.Sup., 306 S.W.2d 452, 457(4); State v. Akers, Mo.Sup., 328 S.W.2d 31, 33(4, 5); State v. Atkinson, Mo. Sup., 293 S.W.2d 941, 944(5).

Although evidence of prior activities is generally limited in such cases to evidence of relation between the prosecuting witness and the defendant, the exclusionary rule is based upon the policy above referred to, and not upon lack of relevancy. See State v. King, 342 Mo. 975, 119 S.W.2d 277, 283(11); State v. Atkinson, supra.

Under the foregoing authorities, we conclude that evidence of prior misconduct on the part of Donovan of the nature of that of October 6 with which Carolyn charged

him would tend to show a disposition on his part to commit such act. Evidence, limited reasonably in time, of prior acts towards members of the Smith household, was, therefore, relevant.

■ Unless forbidden by an exclusionary rule, relevant evidence should be admitted. State v. Knight, 356 Mo. 1233, 206 S.W.2d 330, 333(7). The above-mentioned policy, which excludes evidence of prior acts in criminal cases, is not here involved, and, therefore, exclusion on such basis would not be authorized. The policy which sometimes is applied of excluding evidence in order to avoid confusion of issues would likewise not be applicable, inasmuch as the issue of Donovan's misconduct was necessarily injected by Carolyn's testimony. Finally, insofar as this testimony would tend to impeach Donovan's credibility, it would not be subject to exclusion as an effort to evidence character by specific acts. Rather, it would tend to establish facts in this particular case which would shed light on the credibility of Donovan's testimony. McHugh v. State, 31 Ala. 317, 320; 3 Wigmore on Evidence, Section 943, page 494.

We conclude that the offered evidence was relevant and that its admission was not precluded by any exclusionary rule. Therefore, the trial court erroneously excluded it and for such error the judgment must be reversed and the case remanded. Because other matters here assigned as error may not recur in a new trial, we will not now consider them.

The judgment is reversed and the cause remanded for a new trial.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.