**STATE of Missouri, Respondent,**

**v.**

**Russell SMITH, Appellant.**

**No. 51232.**

Supreme Court of Missouri,

Division No. 1.

Oct. 11, 1965.

Motion for Rehearing or for Transfer to Court En Banc Denied Nov. 8, 1965.

---

Norman H. Anderson, Atty. Gen., Clyde Burch, Asst. Atty. Gen., Jefferson City, for respondent.

Russell Smith, appellant, pro se.

HENLEY, Judge.

Defendant was charged by information with assault with intent to maim with malice aforethought. Section 559.180. (References to statutes are to RSMo 1959 and V.A.M.S.) A jury found him guilty and assessed his punishment at imprisonment in the penitentiary for a term of two years. After his motion for a new trial was overruled, judgment was entered and he was sentenced in accordance with the verdict.

Counsel appointed by the court represented him throughout the trial and also filed and argued his motion for new trial. Defendant filed a printed brief pro se and argued the case in this court in person.

This was the second trial of the case. The first trial, held on February 13, 1963, resulted in the same verdict, judgment and sentence. On appeal to this court that judgment was reversed and the cause remanded for a new trial. See: State v. Smith, Mo., 377 S.W.2d 241.

▉ Defendant's brief is wholly argument and does not approach compliance with our rules. Accordingly, we shall examine the entire record presented for review, the assignments of error stated in the motion for a new trial which are sufficiently specific to comply with the rules, and make such use of his brief as may be possible. Supreme Court Rules 28.02 and 27.20, V.A.M.R.; State v. Russell, Mo., 324 S.W.2d 727; State v. Mace, Mo., 295 S.W.2d 99.

Evidence presented by the state would warrant a finding by the jury that on October 6, 1960, shortly after 6 o'clock, P.M., the defendant, with malice aforethought and intent to maim, assaulted Levi Donovan (better known as Ted Donovan) by throwing muriatic acid into Donovan's face at defendant's home in Monroe City, Missouri. The defense was an alibi: that at the time the acid was thrown in Donovan's face defendant was not in Monroe City but was in Quincy, Illinois. Supplementing this defense, defendant also endeavored to show who, in fact, had thrown the acid and why. His daughter, Caroline, testified that it was she who had thrown the acid and that she did so to repel Donovan's immoral advances.

Unlike the first trial, defendant was permitted to prove all that he offered to prove. See: State v. Smith, supra, 377 S.W.2d 1. c. 244, 245, 246 [6–9]. The case was well tried and there were few objections to evidence by either side. The court and counsel for the state and for defendant did everything possible to see that he had a fair and impartial trial notwithstanding the deleterious efforts of defendant.

Ted Donovan testified that he had known the defendant for over 20 years, that they had been friends and that he had visited in defendant's home and had meals there many times. On October 6, Donovan went to defendant's home during the noon hour to see whether defendant's sons, Fred and Jack, could work for him the next day. He found the two sons cleaning turtles for their father. They told him they would

not know until later whether they would have the turtles finished in time to work for him; that he should come back that evening when they could expect to be able to tell him definitely. As Donovan left, defendant said "be sure and come back tonight and have supper with us and we will know how the boys come out with their turtles." That evening he returned to defendant's home, walked up on the porch and knocked on the front door. When no one answered this knock he started to leave, but turned around and knocked again. This time a voice he recognized as that of defendant answered "come on in, Ted, I got something to show you." The front part of the house was dark, but Donovan could see a light in the kitchen. At about the same time he heard defendant's invitation, he saw defendant's wife "shoot out the back door." He said he opened the door, stepped into the darkened room, and, not being able to see, asked "where you at, Russ?"; that immediately he (defendant) "plastered me * * * he threw something in my face and I never had such black smoke and clouds in my face in my life"; that defendant tried to grab him and whirl him into the bedroom, but that he managed to shove him away; that during this tussle he asked defendant, "what is this all about" and he replied, "you know, you know." Donovan left immediately and went to his home where he lay down under a hydrant and let water run in his face.

Donovan at no time actually saw defendant on this occasion, but positively identified him by recognition of his voice.

The next day Donovan went to a hospital where he remained for six to eight days. He was treated by Dr. W. J. Smith, who died between the first and second trial. The Doctor's testimony in the first trial was read to this jury. His testimony was that his examination revealed acid burns about Donovan's face and eyes, that he had a "derosion of each cornea * * * and burns over the face"; that muriatic acid is commonly known as hydrochloric acid;

that after discharge from the hospital Donovan's vision was 20/50 in the right eye and 20/40 in the left.

Billy Ray Hunter testified that he had known Donovan and defendant 20 or 25 years; that he saw Donovan the evening of October 6 at the latter's home; that Donovan's face was red and he told him it looked like acid burns, but that Donovan said it was from paint thinner on a rag used in his work; that on his way home he (Hunter) stopped at defendant's house for a visit; that defendant asked him whether he had seen Donovan and, if so, "how did he look"; that he told defendant Donovan "had got paint thinner in his eyes", and defendant said "he never got paint thinner either, it was muriatic acid because I threw it in his face." When Hunter asked why he had thrown the acid, defendant said "because he (Donovan) had been making passes at his (defendant's) wife." Later that evening Hunter took Donovan to his (Hunter's) home for the night and told him what defendant said had been thrown in his eyes.

Evalene Hunter, wife of Billy, testified that sometime after dark that evening, during her husband's absence, defendant came by her house and asked if she had seen Donovan. She said, "No." Defendant then said, "Well, I done him just like I done the other one." She said she did not know what he meant by those words.

Henry and Eula Mefford, husband and wife, testified that defendant was at their home that evening about 9 o'clock; that defendant said to them: "I have put another man in the hospital"; that Mrs. Mefford asked: "Who is it this time", and defendant replied: "Ted Donovan"; that defendant further told them he had put Donovan in the hospital by throwing acid in his face.

Sheriff Mark Bodine testified that he arrested defendant on the morning of October 7, at the latter's home; that defendant voluntarily told him at that time that "he had put another man in the hospital

* * * Ted Donovan"; that defendant had said, "Well, I threw some acid in his face." The sheriff also testified that at the City Hall, later in the morning, defendant told him, "that he asked Ted in, and stepped behind the door and as soon as Ted got in he throwed acid in his face."

Leo F. Pringer, a member of the Missouri State Highway Patrol, testified that he was at the City Hall on the morning of October 7, 1960, in the presence of the Sheriff and other officers and heard defendant make the voluntary statement that he had thrown muriatic acid in the eyes of Ted Donovan.

■ Seven of the twenty-one numbered paragraphs of defendant's motion for a new trial, being paragraphs 1, 2, 3, 5, 6, 7 and 8, although vague and not stated with the particularity required, appear to question the sufficiency of the evidence to support the verdict and judgment. The above-recited evidence is substantial, and is sufficient to support the verdict and judgment. Essentially the same evidence was presented by the state in this trial as was presented in the first. In that case the court stated at l. c. 244: "The recital of the evidence presented by the state leaves no doubt that, if believed, it constituted substantial evidence of the defendant's guilt." We remain of the same mind and opinion. The first case was reversed and remanded for a new trial because the trial court had erroneously excluded certain evidence pertaining to alleged improper interest of Donovan in the young girls in the defendant's household and alleged improper advances by him toward them and one of their friends. In this trial the evidence erroneously excluded in the first was freely and fully presented and received, and such few objections as may have been sustained to evidence on this or any other subject was not met with an offer by defendant to prove such matters.

■ In paragraphs 4 and 9 of defendant's motion he says the court erred in admitting in evidence the testimony of Henry Mefford, Eula Mefford, Evalene Hunter, Sheriff Bodine, and other unnamed witnesses, regarding his admissions that he threw acid in Donovan's face, because "no proper foundation was laid for the testimony" and because all "the circumstances of the[se] occurrence[s] were not testified to by the State's witnesses." No objection was made by defendant to any portion of the testimony of any of the named witnesses. Having made no objection at the time the testimony was presented, he is in no position now to claim the trial court erred. State v. Brookshire, Mo., 353 S.W.2d 681, 688 [17] and cases there cited. Defendant does not state what "circumstances" were not testified to by the State's witnesses, and neither this court nor the trial court is required to speculate on what he has in mind by this conclusion. The record shows that his counsel fully cross-examined these witnesses and had ample opportunity to show such "circumstances" as may have been relevant. Moreover, defendant testified at length, without objection, as to why he made the admissions and had full opportunity to relate all circumstances under which they were made.

■ In paragraphs 10, 15, 17 and 18 of his motion, defendant says the court erred in sustaining objections to testimony of certain witnesses. Paragraph 10 does not name the witnesses nor state the testimony to which he has reference. Paragraph 15 complains of error in excluding testimony of Jack Smith pertaining to immoral statements and advances by Donovan toward Jack Smith's wife. We have carefully read the testimony of Jack Smith and do not find in the record anything that might even remotely relate to the error of which defendant complains. Paragraph 17 complains of error in excluding testimony of Jack Smith that he had not worked for Donovan for some time prior to October 6, and did not intend to work again for Donovan. The record shows that this testimony was not excluded. Para-

graph 18 complains of error in excluding testimony that the Sheriff and Prosecuting Attorney "showed a pronounced animus toward defendant Smith and his family at the time of arrest." This assignment too does not name the witnesses to which he has reference. The record shows that all witnesses to the arrest at defendant's home testified fully without objection. Assignments 10, 15, 17 and 18 are so vague they obviously are without merit and present nothing for review.

Assignments numbered 11, 12, 13, 14, 16 and 19 either do not state that the court erred in any respect, or are obviously so unrelated to any material issue in the case, or are so vague and unintelligible, that they do not merit discussion.

In paragraph 20 defendant assigns as error improper argument of the Prosecuting Attorney. The transcript does not contain the arguments of counsel. It was approved by counsel for the state and for the defendant. Had there been any merit in this assignment the argument of the Prosecuting Attorney would no doubt have been included. Without the argument in the transcript we may not review this assignment of error. State v. Cross, Mo., 343 S.W.2d 20, 25 [4].

In paragraph 21 of defendant's motion, his last assignment, he alleges: "that such errors on the part of the Court greatly prejudiced the rights of the defendant to a fair and impartial trial." We understand that in this assignment he refers to the alleged errors set out in paragraphs 1 to 20, inclusive, of his motion. We have ruled on those that conceivably presented anything for review, holding that the trial court did not err in any respect. We have carefully read and examined the transcript and the briefs and do not find wherein all the matters alleged in the motion would, in their totality, constitute the denial to defendant of a fair and impartial trial. Assignment 21 is also too general to present anything for review. State v.

Rowe, 324 Mo. 863, 24 S.W.2d 1032, 1038 [16].

The information is sufficient in form and substance. The verdict is in proper form and responsive to the information and issues submitted. Allocution was granted and the sentence and judgment are proper and responsive to the verdict.

The judgment is affirmed.

All concur.